**Marvin FRANCOIS,
Petitioner-Appellant,**

v.

**Louie L. WAINWRIGHT,
Respondent-Appellee.**

No. 85–5430.

United States Court of Appeals,
Eleventh Circuit.

May 28, 1985.

Alton G. Pitts, Michael Bowling, Orlando, Fla., Steven H. Malone, St. Petersburg, Fla., for petitioner-appellant.

Calvin Fox, Carolyn Snurkowski, Asst. Attys. Gen., Miami, Fla., for respondent-appellee.

Before VANCE, HENDERSON and CLARK, Circuit Judges.

BY THE COURT:

Before the court are appellant's motions for certificate of probable cause, for stay of execution pending appeal, and for oral argument. We DENY the certificate of probable cause. We DENY the motion for

* Honorable Howard T. Markey, U.S. Circuit Judge for the Federal Circuit, sitting by designa- tion.

oral argument. The briefs have been excellent and the court finds that oral argument is unnecessary.

The court denies the motion to stay the execution beyond the 24 hours already granted. The *Enmund* issue [*Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140] fails because the case is controlled by *Ross v. Kemp,* 756 F.2d 1483 (11th Cir.1985) (en banc). The evidence clearly shows the defendant intended the victims to die. The facts in *Bullock v. Lucas,* 743 F.2d 244 (5th Cir.1984), *cert. granted sub. nom., Cabana, Supt. v. Bullock,* —— U.S. ——, 105 S.Ct. 2110, 85 L.Ed.2d 476 (1985), are sufficiently different to lead us to conclude that whatever its eventual outcome in the Supreme Court, that outcome would not affect the decision in this case.

The prosecutorial argument issue is meritless, as is the claim that the evidence was insufficient to support the death penalty.

The *Hitchcock* claim deserves a full discussion because of certain cases pending in our court en banc.

 The central thrust of the Supreme Court's capital punishment decisions has been that a defendant in the penalty phase of a capital trial is entitled to an "individualized determination" of whether he should receive a sentence of life imprisonment or death. *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 2743–44, 77 L.Ed.2d 235 (1983). In order to effectuate this guarantee, the Court held in *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) that there can be no restriction on what a defendant can offer in mitigation at the penalty phase because to restrict mitigating evidence "creates the risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty." *Lockett, supra,* 438 U.S. at 605, 98 S.Ct. at 2965.

In June, this circuit will rehear en banc two cases raising *Lockett*-type claims: *Hitchcock v. Wainwright,* 745 F.2d 1332 (11th Cir.1984), rehearing en banc granted (11th Cir.1985), and *Songer v. Wainwright,* 756 F.2d 800 (11th Cir.1985), rehearing en banc granted, 756 F.2d 1482 (11th Cir. 1985). In those two cases, Hitchcock and Songer maintain that the Florida death penalty statute, as it was understood by their counsel limited the production by them of nonstatutory mitigating evidence. Francois maintains that statute as understood by his counsel similarly limited his penalty phase proceeding in an unconstitutional manner, and thus that his execution should be stayed until the en banc court decides *Hitchcock* and *Songer* and determines the extent to which this is a viable constitutional claim.

The argument of petitioners in *Hitchcock* and *Songer* in more detail is as follows. In *State v. Dixon,* 283 So.2d 1 (Fla.1973), the initial Florida Supreme Court decision interpreting the new Florida death penalty provision enacted after *Furman,* the Florida court expressly and repeatedly referred to the "mitigating factors" listed in the statute. In 1976 in *Cooper v. State,* 336 So.2d 1133 (Fla.1976), *cert. denied,* 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 239 (1977), the Florida Supreme Court declared that the statute did restrict mitigating factors to those set forth in the statute.[1] In *Cooper,* the Court stated that the sole issue in a capital penalty phase proceeding was "to examine in each case the itemized aggravating and mitigating circumstances." 336 So.2d at 1139. The reason offered for this holding was that to allow nonstatutory mitigating evidence would make the statute unconstitutional by reintroducing the unbridled discretion awarded to the sentencer in capital cases condemned in *Furman. Id.*[2]

---

**1.** In *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), the Supreme Court upheld the statute as facially valid. The Court, however, suggested that the mitigating circumstances provision of the statute might be open ended. 428 U.S. at 250, n. 8, 96 S.Ct. at 2965, n. 8.

**2.** The court went on to say:

> In any event, the legislature chose to list the mitigating circumstances which it judges to be reliable for determining the appropriateness of a death penalty .... and we are not free to expand the list.

Following *Cooper*, the Florida Supreme court adhered to this construction of the statute. *See, e.g., Gibson v. State*, 351 So.2d 948 (Fla.1977); *Barclay v. State*, 343 So.2d 1266, 1270–71 (Fla.1977). However, in *Lockett v. Ohio, supra*, in 1978, the United States Supreme Court expressly held that there could be no such limitation on mitigating evidence. Then, several months after *Lockett*, the Florida Supreme Court construed the Florida statute in a manner that was in harmony with the Supreme Court's decision in *Lockett*. *See Songer v. State*, 365 So.2d 696, 700 (Fla. 1978) (opinion on rehearing).[3]

Francois, like Hitchcock, was tried in the period between the Florida Supreme Court's decision in *Cooper* and the Supreme Court's decision in *Lockett v. Ohio*. In both cases, trial counsel offered affidavits indicating that their development and presentation of mitigating evidence was constrained by their understanding of the limitation of mitigating evidence to the expressly mentioned mitigating factors. In *Hitchcock* and *Francois* present counsel has also submitted affidavits of family members attesting the difficult childhood of both Hitchcock and Francois and of their respective good characters. Additionally, in both cases present counsel proffered the reports of psychologists or behaviorial scientists to corroborate this testimony and to indicate either their potential for rehabilitation (in *Hitchcock*), or as here the fact that the crime was the result of the environment in which he was raised.

The district court in this case said that "Here, indeed, such factors [nonstatutory mitigating factors] were presented. The assertion that they were not fully devel-

oped or enhanced [due to counsel's belief of the restrictive scope of the statute] does not give rise to a conclusion of constitutional violation." *Francois v. Wainwright*, No. 85–1918, (S.D.Fla. 5/25/85). It is true that in this case trial counsel did put several family members on the stand and asked them a few questions regarding whether they believed Francois could be rehabilitated and whether he had a violent personality. *See Francois v. Wainwright*, 741 F.2d 1275, 1285 n. 10 (11th Cir.1984).

However, this was also true in *Hitchcock*. The panel majority in *Hitchcock* stated:

> Petitioner argues that greater details as to his upbringing in an environment of extreme poverty, his solid character traits, devotion to hard work, willingness to contribute to the family's support, and respect for adults should have been presented as evidence of nonstatutory mitigating factors. *All of this was developed, however, to some extent for the jury.*

745 F.2d at 1338 (emphasis added).

■ Despite the surface similarity of *Hitchcock*, we conclude that a stay should not be granted. It is our opinion that the proffered evidence of nonstatutory mitigating evidence would not have affected the sentencing outcome in this case had it been submitted to the jury.[4] Our review of the evidence convinces us that the jury found that Francois shot six persons, intending to kill them to eliminate them as witnesses to a robbery. Five died. The survivor identified Francois from a police lineup at which Francois' counsel was present.

336 So.2d at 1139.

**3.** Panels of this circuit as well as various opinions by Justices of the Supreme Court have recognized the effect *Lockett* had on the Florida statute. *See, e.g., Ford v. Strickland*, 696 F.2d 804, 812 (11th Cir.1983) (en banc); *Foster v. Strickland*, 707 F.2d 1339 (11th Cir.1983) (en banc); *Spaziano v. Florida*, — U.S. —, — n. 4, 104 S.Ct. 3154, 3158 n. 4, 82 L.Ed.2d 340, 347 n. 4 (1984). The Florida Supreme Court has itself recognized that *Cooper* could have been

misconstrued by trial courts to limit the consideration of mitigating factors. *See, e.g., Perry v. State*, 395 So.2d 170 (Fla.1981).

**4.** The state trial court instructed the jury as follows with respect to mitigating evidence:

> The aggravating circumstances which you may consider are limited to those upon which I have just instructed you. However, there is no such limitation upon the mitigating factors which you may consider.

The proffered evidence shows that Francois was the product of a sordid and impoverished childhood environment. His parents were not married. His father was a habitual heroin addict who never worked, who brought other addicts into the home for the ingestion of heroin in front of Francois when a child, and who beat Francois because he would not fight with other children when he was a boy. Francois' mother often worked as a prostitute and was of little benefit to Francois during his childhood. She married but Francois' step-father abused him. Francois grew up as a child of the street. At the same time he was smart, and although not finishing school, he obtained his G.E.D.

The behavioral scientists in their affidavits posit that "... some offenders, like Marvin Francois, are themselves victims of circumstances that shape their lives in ways beyond their deliberate control." They suggest that given Francois' chaotic antisocial upbringing, "clear mitigation of punishment compellingly surfaces."

At the time of the crime Francois was 31 years of age. He had been convicted of two felonies involving violence. We conclude that granting a stay would serve no justiciable purpose. We can conceive of death penalty cases where the nonstatutory mitigating evidence proffered here might affect the sentencing outcome. This is not one of those cases. We conclude that the appellant has no chance of changing the outcome of the five death sentences in this case, even if he prevailed on appeal and received a new sentencing hearing.