Raleigh **PORTER**, Petitioner-Appellant,

v.

Louie L. **WAINWRIGHT**, Secretary,
Florida Department of Corrections,
Respondent-Appellee.

No. 85–3832.

United States Court of Appeals,
Eleventh Circuit.

Nov. 17, 1986.

As Amended Dec. 29, 1986.

Douglas Chumbley, Kimbrell & Hamann, P.A. (Eileen Rooney, Paralegal), R. Benjamine Reid, Miami, Fla., for petitioner-appellant.

Robert J. Landry, Asst. Atty. Gen., Office of the Atty. Gen., Tampa, Fla., for respondent-appellee.

Before GODBOLD, HILL and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

Porter was indicted on two counts of premeditated murder and tried before a jury in a Florida circuit court. On November 30, 1978, the jury returned a general verdict, finding Porter guilty on both counts. Following a sentencing hearing, the jury recommended that Porter receive life imprisonment rather than the death penalty. On December 11, 1978, the trial

judge overrode the jury's recommendation and sentenced Porter to death.

On June 4, 1981, the Florida Supreme Court affirmed Porter's conviction but vacated and remanded the case for resentencing. *Porter v. State*, 400 So.2d 5 (Fla. 1981). The basis for the order to vacate Porter's sentence was a violation of *Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), i.e., that Porter had not been allowed to rebut certain deposition testimony that the judge considered for sentencing purposes. At resentencing before the judge only, Porter's attorney presented evidence impeaching the previously unrebutted deposition testimony but presented little or no other evidence in mitigation. The trial judge again sentenced Porter to death.

On January 27, 1983, Porter's conviction and sentence were affirmed by the Florida Supreme Court. *Porter v. State*, 429 So.2d 293 (Fla.1983). The United States Supreme Court denied certiorari. 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983). The governor of Florida denied clemency and signed a death warrant effective from October 22, 1985 to October 29, 1985. On October 22, 1985, Porter filed a motion in Florida circuit court to vacate judgment and sentence pursuant to Fla.R.Crim.P. 3.850. He also applied for a stay of execution. The 3.850 motion and stay were denied on October 22, 1985. The Florida circuit court did not hold an evidentiary hearing. On October 26, 1985, Porter's petition for federal habeas corpus was denied by the district court without benefit of an evidentiary hearing. That same day, this court granted a stay of Porter's execution pending appeal.

On appeal, Porter challenges both his first sentencing hearing before the trial judge and his second sentencing hearing before the trial judge. Porter claims that he was deprived of effective assistance of counsel in violation of the Sixth Amendment because his attorneys at both sentencing hearings failed to adequately investigate and present evidence of mitigating circumstances. Porter also asserts on ap-

peal that his Sixth Amendment right to counsel was abridged at trial because his trial counsel had a conflict of interest as a result of that attorney's prior representation of a prosecution witness. Because we conclude that facts material to both of these claims were not adequately developed in state court, we remand this case to the district court for an evidentiary hearing in order to develop the facts necessary to resolve these issues. Porter's other claims on appeal are without merit.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL AT SENTENCING

Porter's first claim on appeal is that his representation at sentencing was constitutionally deficient because his attorneys at both sentencing hearings failed to adequately investigate and present evidence in mitigation of his crime.

At the first sentencing hearing, the only mitigating evidence presented was Porter's brief testimony. The jury recommended a sentence of life imprisonment. The trial judge rejected the jury's recommendation and sentenced Porter to death. The trial judge found that the statutory aggravating circumstances were that the murders were committed while Porter was engaged in the commission of a robbery for pecuniary gain, that the murders were committed for the purpose of avoiding or preventing a lawful arrest, and that the murders were especially heinous, atrocious and cruel. *See* Fla.Stat.Ann. § 921.141(5)(d), (e), (h) (West 1985). The trial judge concluded that these aggravating circumstances outweighed the scant mitigating evidence that Porter had advanced. In fact, the trial judge found no evidence which tended to mitigate the crime. The trial judge noted that the defendant's age at the time of the crime, twenty-two, weighed against him in the eyes of the court because of the disparity between Porter's age and his physical strength and that of the victims. The trial judge also was not swayed by the fact that Porter was married and had two children because Porter was not supporting either his wife or his children but, in fact, he was

living with another woman prior to and on the date of the murders.

The Florida Supreme Court vacated Porter's sentence and remanded for resentencing because Porter had not been allowed to rebut the deposition testimony of Larry Schapp which the judge had considered for sentencing purposes. On remand before the trial judge only, Porter's attorney presented evidence impeaching the Schapp deposition but virtually no other evidence.[1] The trial judge resentenced Porter to death.

■ At a minimum, Porter asserts, the district court erred in refusing to hold an evidentiary hearing on his ineffective assistance of counsel claim. While the district court is required to conduct an evidentiary hearing in certain circumstances, such a hearing is not required unless the petitioner alleges facts which, if proved, would entitle him to federal habeas relief. *Townsend v. Sain*, 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1963); *Guice v. Fortenberry*, 661 F.2d 496, 503 (5th Cir. 1981) (former Fifth Circuit en banc).[2] Thus, assuming the facts Porter alleges to be true, he must state a claim of ineffective assistance of counsel under the standard enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland*, Porter must show that his attorneys' performances at sentencing were deficient and that the deficient performances prejudiced his defense. 104 S.Ct. at 2064.

In an effort to satisfy the performance prong of *Strickland*, Porter proffered a number of exhibits in both his state and federal habeas corpus proceedings. These exhibits were proffered as evidence of mitigating circumstances that his sentencing attorneys could have, but failed to present. A summary of that evidence is relevant here.

Affidavits of Porter's mother and sister describe an extremely difficult home environment. These affidavits include accounts of how Porter's stepfather inflicted mental and physical abuse on Porter to the point that Porter would not come home while his stepfather was there. These affidavits also depict Porter as a loving human being who cared deeply about his mother, sister, wife, and daughter. Both Porter's mother and sister also stated that they were not contacted by Porter's lawyers.

Porter also proffered his records from elementary school through high school. These records show that Porter was, at times, an average-to-good student and at other times was a poor student and a discipline problem. Much of Porter's high school career was spent in various juvenile detention centers, from one of which he graduated. A former superintendent of Porter's high school alma mater described that institution as grossly overcrowded, run by untrained and unnecessarily punitive staff members, and rife with incidents of physical and sexual abuse by some of the staff and among the boys. Porter also proffered the affidavit of a professor of criminology who had conducted research at another of the juvenile detention centers at which Porter was housed. This affidavit paints a grim picture of juvenile detention at this particular institution and concludes that juveniles incarcerated there were molded in such a way that, to some extent, they are not responsible for their subsequent behavior. Porter also proffered a book published in 1976 describing juvenile

---

**1.** Porter's attorney mentioned the fact that Porter had been employed during the relevant time period (a fact that came out during the guilt phase of Porter's trial), and presented a copy of a record showing that the charges against a prosecution witness were nolle prossed after that witness testified against Porter at trial, but did not produce any other mitigating character "evidence" besides the evidence impeaching the Schapp deposition testimony.

**2.** In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir.1982), this court adopted as binding precedent all of the post-September 30, 1981, decisions of the full en banc court of the former Fifth Circuit. *Id.* at 34. *Cf. Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

institutions and their effect on those people incarcerated at them.

Finally, Porter proffered the affidavit of a clinical psychologist who interviewed Porter after sentencing. Following a three and one-half hour examination, and a review of Porter's educational records, mental health reports, and the above described affidavits of Porter's family members and others, the psychologist concluded that Porter is a victim of his environment.[3] Porter argues that the totality of this evidence shows that deep down he is a good person and that his harsh home environment and his experiences in juvenile detention are at least partly to blame for the crimes he committed.

## A. The First Sentencing

We now turn to the performance of Porter's attorneys at the first sentencing hearing. The only mitigating evidence presented at the hearing was Porter's own brief testimony. That testimony, in its entirety, is as follows:

BY MR. JACOBS:

Q Could you state your name, please, for the record, sir?

A Raleigh Porter.

Q How old are you, Raleigh?

A Twenty-two.

Q Have you ever been convicted of a crime before?

A I pled guilty to receiving stolen property one time.

Q Is that the only conviction of crime you have?

A Yes, sir.

Q Are you married?

A Yes, sir.

Q Do you have any children?

A Two.

Q Do you have anything that you wish to say to the Jury at this time, as to this part of the trial?

A At this time, I sort of feel like I'm a fetus. You are all my surrogate mother. [sic] It's up to you if you're going to abort me or let me live.

Trial Record, vol. 5 at 744.

The state argues that Porter cannot satisfy the performance prong of *Strickland* because the two attorneys representing him at the first sentencing, Jacobs and Widmeyer, made a tactical decision not to present evidence of Porter's background in mitigation. First, the state claims that Jacobs and Widmeyer knew that Florida law did not limit mitigating circumstances to those enumerated in the statute. As evidence of this knowledge, the state points to a jury instruction, proposed by the defense, which read

The aggravating circumstances which you may consider are limited to those upon which I have just instructed you. However, there is no such limitation upon the mitigating factors which you may consider.

Brief of Appellee at 19. This requested instruction was accepted by the trial judge and given to the jury.

The state contends that though Jacobs and Widmeyer realized the law permitted the introduction of mitigating character evidence at sentencing, they decided that such evidence should not be presented for tactical reasons. The primary justification the state advances for not presenting this evidence is that to have done so would have opened the door to the state's presentation of evidence of Porter's past criminal activi-

---

3. We expressly decline to consider for purposes of our decision the psychologist's impressions of Porter's adjustment to life on death row. This information was not available at either of Porter's sentencing hearings. Thus, Porter's attorneys could not have been ineffective for failing to present it.

The Supreme Court's decision in *Skipper v. South Carolina,* — U.S. ——, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986), is notwithstanding. Although the *Skipper* Court held that a death row prison-er's adjustment to prison life was relevant mitigating evidence, the evidence in question in *Skipper* regarded the defendant's incarceration between the time of his arrest and the time of trial. Thus, *Skipper* is distinguished from the instant case in that the evidence of adjustment to prison life was potentially available to the sentencing judge in *Skipper,* whereas the evidence of Porter's adjustment to prison refers only to his stay on death row *since* his second sentencing hearing.

ty. The state points out that Jacobs and Widmeyer successfully prevented the prosecutor from cross-examining Porter regarding crimes Porter had allegedly committed, but for which he had not been convicted. Also, Porter's lawyers were successful in obtaining a life recommendation from the jury, although the sentencing judge indicated that he believed this recommendation was primarily a result of Widmeyer's closing argument during which he improperly described the electrocution process.[4]

■ Porter argues that his original sentencing attorneys' failure to present mitigating character evidence was not a strategic decision. As evidence of this claim, Porter points out that one of the few questions asked of Porter at the first sentencing hearing concerned Porter's prior criminal activity. Thus, Porter contends, the state cannot validly argue that Porter's attorneys were trying to keep the door closed when, in fact, they themselves opened it. Moreover, Porter asserts that the decision not to present mitigating character evidence at the first sentencing hearing could not have been a reasonable tactical decision because his attorneys had breached their affirmative duty to investigate potential mitigating evidence. *See Douglas v. Wainwright,* 714 F.2d 1532, 1556 (11th Cir.1983), *vacated and remanded,* 468 U.S. 1206, 104 S.Ct. 3575, 82 L.Ed.2d 874 *adhered to on remand,* 739 F.2d 531 (1984), *vacated and remanded on other grounds,* 468 U.S. 1212, 104 S.Ct. 3580, 82 L.Ed.2d 879 (1984).

Porter also contests the state's characterization of his prior criminal activity. Porter asserts that his prior criminal activity was not very bad nor extensive and, thus, even if Jacobs and Widmeyer decided not to present mitigating character evidence for fear that Porter's prior criminal activity would come to light, such a decision was unreasonable.

■ Of course, if Porter's attorneys made a reasonable tactical decision not to present mitigating evidence, there can be no finding of ineffective assistance of counsel. *Stanley v. Zant,* 697 F.2d 955, 966 (11th Cir.1983), *cert. denied,* 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984). Moreover, an attorney's decision not to investigate mitigating character evidence must not be evaluated with the benefit of hindsight but rather should be accorded a strong presumption of reasonableness. *Strickland,* 104 S.Ct. at 2065. Without the aid of an evidentiary hearing at any level on this issue, however, we are unable to conclude that Jacobs and Widmeyer adequately investigated potential mitigating evidence, nor can we conclude that their decision not to present mitigating evidence was tactical. The inferences which each side gleans from the record, summarized above, establish only that there are conflicting inferences that must be resolved in an evidentiary hearing. In light of the mitigating evidence Porter proffered to the district court, assuming Porter's version of the facts to be true, Porter can successfully overcome the performance obstacle of the *Strickland* test.

In order for Porter to show constitutional ineffective assistance of counsel, he must also show that he was prejudiced by his attorney's performance. *See Strickland,* 104 S.Ct. at 2064. Porter must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 2068. Thus, Porter must show enough to undermine our confidence in the trial judge's decision to reject the jury's recommendation of life.

Our assessment of this issue should "proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision." *Id.* In this case, the trial judge applied Fla.Stat.Ann. § 921.-141(3) (West 1985) in rejecting the jury's

---

**4.** The Florida Supreme Court disapproved such descriptions as improper. *Porter v. State,* 429 So.2d 293, 296 (Fla.1983).

recommendation of life. The Florida Supreme Court has held that, in order for a judge to reject a sentencing jury's recommendation of life imprisonment, the facts justifying a death sentence must be so clear and convincing that virtually no reasonable person could differ as to the appropriateness of the death penalty. *Eutzy v. State*, 458 So.2d 755, 758 (Fla.1984), *cert. denied*, 471 U.S. 1045, 105 S.Ct. 2062, 85 L.Ed.2d 336 (1985); *Lemon v. State*, 456 So.2d 885, 888 (Fla.1984), *cert. denied*, 469 U.S. 1230, 105 S.Ct. 1233, 84 L.Ed.2d 370 (1985); *Tedder v. State*, 322 So.2d 908, 910 (Fla.1975). In light of the very strict standard that applies in jury override cases, and in light of the fact that the sentencing judge viewed this case as one without any mitigating circumstances [5] when in fact, assuming Porter's allegations to be true as we must in this posture, there were mitigating circumstances which cannot be characterized as insubstantial, our confidence in the outcome—the outcome being the trial judge's decision to reject the jury's recommendation—is undermined. *See Strickland*, 104 S.Ct. at 2068. We cannot say that, with Porter's proffered evidence in hand, no reasonable person could differ as to the appropriate penalty.[6] Thus, we conclude that, assuming Porter's version of the facts to be true, Porter would have satisfied both the performance and prejudice prongs of the *Strickland* test for ineffective assistance of counsel.

■ Having concluded that Porter has alleged facts that would entitle him to relief, we next turn to whether or not Porter should be afforded an evidentiary hearing on the ineffective assistance issue. Claims of ineffective assistance of counsel must be reviewed " 'from the perspective of counsel, taking into account all of the circumstances of the case, but only as those circumstances were known to him at the time in question.' " *Douglas v. Wainwright*, 714 F.2d at 1554 (quoting *Washington v. Watkins*, 655 F.2d 1346, 1356 (5th Cir. 1981) (Unit A), *cert. denied*, 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982)).[7] This standard requires that the circumstances as known to Porter's lawyers at the time in question be reflected in the record. In the instant case, no court, state or federal, has held an evidentiary hearing on this issue. Because Porter alleged facts which, if proved, would entitle him to relief, and because the state did not hold an evidentiary hearing on this issue, the district court was required to hold an evidentiary hearing

5. The sentencing judge at the original sentencing noted only two possible mitigating circumstances, Porter's age of 22 years, and the fact that Porter had a wife and two small children. The judge expressly discounted both. The judge noted that Porter was four years past the age of majority, that he was young, strong and muscular, and that he had heinously attacked an elderly couple. The judge concluded that, considering the disparity of age with the victims, Porter's age worked against him instead of for him. With respect to his family status, the judge noted that Porter was not supporting his wife and children, but was living with another woman, thus discounting the only other mitigating factor. Obviously, it is far easier to conclude that no reasonable juror would grant life imprisonment in a case where there are no mitigating circumstances.

6. Since this case involves a jury override, we need not decide whether Porter's proffered evidence would undermine our confidence in a death sentence entered upon recommendation of the jury. Our conclusion in this jury override case is bolstered by this court's recent decision in *Thomas v. Kemp*, 796 F.2d 1322 (11th Cir.1986). In *Thomas* the defendant proffered

mitigating character evidence that had not been presented at his sentencing. As in the instant case, *Thomas* proffered the testimony of family members and others to show that *Thomas* had a difficult home environment, that he cared for his family, that he worked hard at school and that he was mentally ill. The *Thomas* court held that, had this evidence been presented at sentencing, there was a reasonable probability that the result of the sentencing would have been different. 796 F.2d at 1325.

*Thomas* was not a jury override case. Since the facts in *Thomas* were sufficient to undermine the court's confidence in the death sentence which was rendered by the jury itself, we are sure that the facts alleged by Porter are sufficient to undermine confidence in the jury override sentence here.

7. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

and find facts relevant to Porter's claim. *See Douglas*, 714 F.2d at 1554. Thus, we remand this case for an evidentiary hearing on the issue of whether Porter's attorneys at his original sentencing were unconstitutionally ineffective for failing to investigate into and present mitigating character evidence.

### B. *The Second Sentencing*

If on remand, the district court concludes that Porter's attorneys at the first sentencing were constitutionally ineffective, Porter would be entitled to a new sentencing hearing before the trial judge.[8] If the district court finds that Porter's original sentencing lawyers were effective, then the district court must address Porter's claim that his second sentencing lawyer, Wayne Woodard, was ineffective. With respect to the second sentencing, the state repeats its argument that Porter cannot show ineffective assistance of counsel because Woodard made a conscious, tactical decision not to present evidence of Porter's background in mitigation. To have presented such evidence, the state asserts, would have opened the door to damaging character evidence, including evidence of Porter's prior criminal activity. As evidence of the assertion that Woodard made a tactical decision not to present mitigating character evidence, the state points to a motion Woodard filed prior to the second sentencing hearing in which he requested the court to permit Porter to present character and background testimony from family members. After that motion was granted, Porter was granted a two-week continuance during which Woodard filed a witness list naming Porter's mother as a potential witness. He presented evidence impeaching the Schapp deposition and Porter's past employment as mitigating factors, but did not offer the testimony of Porter's family members. According to the state, these facts indicate that Woodard was aware of the opportunity to present mitigating character evidence but simply made the tactical decision not to do so.

Porter argues that Woodard's failure to present the mitigating evidence that Porter has proffered was not a reasonable tactical decision. Porter contends that Woodard's failure to present mitigating character testimony could not have been strategic because Woodard had erroneously concluded that such evidence was inadmissible. Porter argues that his attorney erroneously thought that the resentencing was limited to evidence in rebuttal of the Schapp deposition, to cure the *Gardner* violation at the first sentencing. According to Porter, Woodard was confused about this matter even though the trial court had granted a motion to present such evidence. Porter claims that this alleged confusion is evidenced by a statement Woodard made to the trial judge at the second sentencing hearing:

> MR. WOODARD: In regard to this, Your Honor, I would like to give the Court the case of Songer (phonetic) v. State, it's a '78 Supreme Court case identical to the situation that we have here.
>
> This case, Your Honor, was remanded for one reason and one reason only, within that decision, that Mr. Porter was denied due process and that he was denied the right to confront and to put on any evidence of relation to a deposition that apparently the Court relied upon of one Larry Schapp. Those are the identical facts that the Songer (phonetic) Case and we would indicate, Your Honor, that that indicates that this hearing is limited solely to what ... it was remanded for and the only thing it was remanded for, Your Honor, is for Mr. Porter to present any evidence he might have in contradiction of anything said in the deposition.

---

8. The state does not argue that the second sentencing hearing in this case could cure the taint of constitutionally ineffective assistance of counsel at the first sentencing; any such argument would be weak in any event in light of the fact that the available mitigating evidence as alleged was not adduced at the second hearing either, and in light of the fact that the remand order might have been interpreted to limit the second hearing to the *Gardner* issue. See discussion below.

Trial Record, vol. 1 at 33–34. Thus, Porter contends that Woodard erroneously believed that he was barred by law from presenting anything other than evidence impeaching the Schapp deposition.

Alternatively, Porter claims that even if Woodard believed that he could present other mitigating evidence, his failure to do so was not a reasonable tactical decision because Woodard had not conducted any investigation of potential mitigating evidence. Porter argues that not only is the record devoid of direct evidence of an investigation by Woodard, but also the state's assertion that Woodard conducted such an investigation is contradicted by Porter's mother's and sister's statements that they were not contacted by Porter's attorney.

Finally, Porter claims that the state's reliance on Porter's past criminal activity as a justification for Woodard's alleged tactical decision is misplaced since Porter's only prior conviction as an adult was for receiving stolen property. Besides Porter's statement at his first sentencing hearing admitting that conviction, our search of the record on appeal fails to reveal any evidence of Porter's prior criminal activity and, thus, we cannot conclude one way or the other about whether Porter's record was so bad that Woodard might have reasonably decided not to interview Porter's family members. *See Stanley v. Zant,* 697 F.2d at 965.

Although the state has shown facts giving rise to the inference that Woodard's decision not to present mitigating character evidence was tactical, Porter has pointed to facts giving rise to conflicting inferences. The judge at Porter's 3.850 hearing found that Woodard's failure to present mitigating evidence "was a result of the considered and ... [tactical] decision as opposed to one of negligence...." Appendix to Petition for Writ, vol. II, tab 2 at 708. In the face of conflicting inferences and without the benefit of an evidentiary hearing, this finding is not entitled to a presumption of correctness normally afforded state fact findings in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(d)(6) (state fact finding not entitled to presumption of correctness if habeas petitioner "did not receive a full, fair and adequate hearing in the state court proceeding"). As we noted in our discussion of the performance of Porter's lawyers at his first sentencing, the record we review is limited by the absence of an evidentiary hearing at any level on this issue. Without such a hearing, we are unable to conclude that Woodard adequately investigated potential mitigating evidence nor can we conclude that Woodard's decision not to present mitigating evidence was tactical. Our previous conclusion that Porter has alleged facts which, if proven, would be sufficient to show that he was prejudiced by ineffective assistance at his first sentencing applies as well to Porter's claim of ineffective assistance at his second sentencing. Thus, Porter has alleged facts sufficient to state a claim of ineffective assistance of counsel at his second sentencing hearing. We remand this issue also to the district court for an evidentiary hearing, if necessary, to determine whether Porter's allegations are true.[9]

9. In *Songer v. State,* 365 So.2d 696 (Fla.1978), *cert. denied,* 441 U.S. 956, 99 S.Ct. 2185, 60 L.Ed.2d 1060 (1979), the case to which Woodard referred at the second sentencing hearing, a capital sentence was remanded because the sentencing judge had relied upon a pre-sentence investigation report that was not made available to defense counsel. At resentencing, the trial judge refused Songer's request to present mitigating character testimony. On appeal, the Florida Supreme Court affirmed the trial court's decision, holding that the trial judge properly denied the defendant's motion since the case had been remanded solely to afford the defendant an opportunity to rebut information relied upon by the sentencing judge, but which the defendant had not had the opportunity to refute at the first sentencing. Thus, the Florida law is clear that the trial judge at Porter's second sentencing hearing would not have committed an error of state law if he had limited the evidence to that which was relevant to the remanded issue. What is not so clear is whether or not the trial judge could have exercised discretion to allow other mitigating evidence. We decline to decide that state law question, both because the development of the case on remand may make it unnecessary to decide the issue, and because the issue has not been briefed. However, it is

## II. CONFLICT OF INTEREST

Porter was arrested for the homicides of Harry and Margaret Walwrath on August 22, 1978. On August 23, 1978, assistant public defender Stephan Widmeyer was assigned to represent him. On August 25, 1978, the police obtained a statement from Matha Thomas, then a fellow-prisoner with Porter in the Charlotte County Jail. Thomas stated that, in a conversation with Porter, Porter admitted to the Walwrath homicides. At the time this statement was made, Widmeyer represented Thomas on unrelated forgery charges. On September 1, 1978, Thomas' bail was reduced from $1,575 to $500, pursuant to a stipulation entered into by the prosecutor and Widmeyer, acting as attorney for Thomas. On that same date, Widmeyer moved to withdraw from his representation of Thomas. Widmeyer's motion to withdraw was granted on September 5, 1978.

At trial, Thomas testified against Porter, recounting Porter's alleged admission. Porter claims that, although Widmeyer cross-examined Thomas at trial, Widmeyer was laboring under a conflict of interest, which was never disclosed to Porter, and which inhibited Widmeyer from vigorously defending Porter. Porter seeks an evidentiary hearing on this issue.

To demonstrate that he should have been afforded an evidentiary hearing in the district court on this issue, Porter must first allege facts which, if proved, would entitle him to relief under the Constitution. *Townsend v. Sain,* 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1963); *Guice v. Fortenberry,* 661 F.2d 496, 503 (5th Cir. 1981) (former Fifth Circuit en banc). In order for Porter to prevail on this claim, he must demonstrate that Widmeyer actively represented conflicting interests and that an actual conflict of interest adversely affected Widmeyer's performance. *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980); *Stevenson v. Newsome,* 774 F.2d 1558, 1562 (11th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1476, 89 L.Ed.2d 731 (1986). "An actual conflict exists if counsel's introduction of probative evidence or plausible arguments that would significantly benefit one defendant would damage the defense of another defendant whom the same counsel is representing." *Baty v. Balkcom,* 661 F.2d 391, 395 (5th Cir.1981) (Unit B), *cert. denied,* 456 U.S. 1011, 102 S.Ct. 2307, 73 L.Ed.2d 1308 (1982).[10] In order to show an actual conflict, Porter must demonstrate that Widmeyer chose between possible alternative courses of action such as eliciting or failing to elicit evidence helpful to Porter but harmful to Thomas. *See Stevenson,* 774 F.2d at 1562.

In the instant case, Porter claims that Widmeyer owed a continuing duty to Thomas which prevented vigorous cross-examination without violating the attorney/client privilege. Porter asserts that Widmeyer was forced to choose between discrediting his former client through information learned in confidence, or foregoing vigorous cross-examination in an attempt to preserve Thomas' attorney/client privilege. If true, these assertions would suffice to demonstrate an actual conflict of interest.

In addition to showing an actual conflict of interest, Porter must also show that the conflict adversely affected his lawyer's representation. In other words, Porter must show that another defense strategy that could have been employed by an-

---

clear that if Woodard *reasonably* believed that the second sentencing was limited by *Songer* to the remand issue, then Woodard could not be found ineffective for failing to adduce other mitigating evidence. Although we expressly do not decide this question, Woodard's statements at the second sentencing hearing are strong indications that he believed that *Songer* precluded Porter from presenting mitigating evidence not relevant to the Schapp deposition. *See* quotation at p. 937, *supra. See also* Trial Record, vol. 1 at 38 ("the only thing I can do at this hearing is rebuttal of this deposition...."). What little other evidence Woodard presented, *see* n. 1, *supra,* raises only a weak inference to the contrary.

**10.** In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982), this court adopted as binding precedent all of the post-September 30, 1981, decisions of Unit B of the former Fifth Circuit. *Id.* at 34.

other lawyer would have benefited his defense. *See Stevenson,* 774 F.2d at 1562; *United States v. Mers,* 701 F.2d 1321, 1328, 1329–30 (11th Cir.1983), *cert. denied,* 464 U.S. 991, 104 S.Ct. 482, 78 L.Ed.2d 679 (1983). Porter asserts that another lawyer could have cross-examined Thomas about his bond reduction, about a possible deal between the prosecution and Thomas, and about other communications between Thomas and Widmeyer which may have been important. Porter notes that Widmeyer did represent Thomas through the time when Thomas' bail was reduced, and that Widmeyer and the prosecution entered into a stipulation to reduce the bond, and bond was reduced five days after Thomas' statement incriminating Porter; he also introduced a copy of a record at Porter's second sentencing hearing showing that Thomas' case was ultimately nolle prossed. Supp. Trial Record, vol. 1 at 8. According to Porter, Widmeyer could not ask Thomas about the reasons behind his bond reduction and about the dismissal of charges against him because such communications were protected by the attorney/client privilege. Thomas was one of the prosecution's star witnesses and discrediting his testimony may well have benefited Porter at trial. Thus, Porter's allegations, if true, are sufficient to establish that the conflict adversely affected Widmeyer's performance. In cases where an actual conflict adversely affects a lawyer's performance, prejudice to the defendant is presumed. *Cuyler v. Sullivan,* 446 U.S. at 350, 100 S.Ct. at 1719.

■ The cases cited by the state in which defendants unsuccessfully asserted conflict of interest claims, *Stevenson,* 774 F.2d 1558 (11th Cir.1985); *Burger v. Kemp,* 753 F.2d 930 (11th Cir.), *vacated and remanded on other grounds,* — U.S. ——, 106 S.Ct. 41, 88 L.Ed.2d 34 (1985);

*Barham v. United States,* 724 F.2d 1529 (11th Cir.), *cert. denied,* 467 U.S. 1230, 104 S.Ct. 2687, 81 L.Ed.2d 882 (1984), were resolved against the defendants on the conflict issue only after an evidentiary hearing. *See Stevenson,* 774 F.2d at 1561; *Burger,* 753 F.2d at 940; *Barham,* 724 at 1532.[11] The state is correct in asserting that Porter has failed to prove an actual conflict adversely affecting Widmeyer's performance. However, without an evidentiary hearing, he has had no opportunity to prove this claim. For example, he has had no opportunity to prove the existence of a deal between the prosecution and Thomas, if such a deal was struck. Porter has made a proffer of facts raising a strong possibility of an actual conflict adversely affecting Widmeyer's performance—i.e., Widmeyer represented both Porter and Thomas at the time of Thomas' statement incriminating Porter, and at the time (five days later) when Widmeyer and the prosecutor stipulated that Thomas' bond should be reduced; Widmeyer later had to cross-examine Thomas when Thomas testified against Porter; any agreement, promise of, or hope for leniency in connection with Thomas' statement incriminating Porter would have constituted evidence to impeach Thomas' testimony. The only witnesses who might be expected to have actual knowledge of the reasons why bond was reduced and charges dropped would be witnesses hostile to Porter. Under these circumstances, Porter has made a showing sufficient to warrant an evidentiary hearing where he can subject to cross-examination those witnesses who would be expected to be hostile. Thus, we remand this issue to the district court for an evidentiary hearing. If the district court finds there was an actual conflict of interest which adversely affected Widmeyer's representation, then the pe-

---

11. In affirming the denial of Porter's 3.850 motion, the Florida Supreme Court held that Porter was barred from raising the conflict of interest claim because he failed to raise it on direct appeal. The state has not argued to the district court or to this court that Porter's procedural default on the conflict issue requires him to prove "cause and prejudice" under *Wainwright*

*v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The procedural default doctrine of *Sykes* is not jurisdictional and, thus, we are not required to raise it sua sponte. Since the state has not raised the *Sykes* bar before the district court or on appeal with respect to this issue, we will not consider it. *See Gaddy v. Linahan,* 780 F.2d 935, 942 n. 7 (11th Cir.1986).

tition for a writ of habeas corpus must be granted conditioned upon the state affording Porter a new trial.

### III. BIASED GRAND JUROR

Porter next claims that the grand jury which indicted him was improperly constituted in that one of its members was related by marriage to the homicide victims.[12] This grand juror, Patrick Whalen, allegedly explained this relationship to Eugene Barry, the prosecutor, prior to the grand jury's deliberations. Porter claims that Whalen expressed discomfort in sitting on the grand jury which would hear Porter's case. Barry allegedly told Whalen that his presence was necessary in order to have a quorum, and instructed Whalen to sit on the grand jury and hear testimony, but not to cast a final vote.

Prior to return of an indictment, Porter requested leave to voir dire the members of the grand jury concerning their qualifications. This motion was denied. Porter claims that Whalen's presence tainted the grand jury proceedings, denying him Fourteenth Amendment due process. Porter also asserts that the prosecutor's knowledge of the biased grand juror and failure to disclose this fact when Porter moved for voir dire constituted misconduct rising to the level of a constitutional violation.

■ Applying the Supreme Court's reasoning in *United States v. Mechanik,* ——— U.S. ———, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986), to the facts of this case, we conclude that, assuming the truth of Porter's claims, the petit jury's verdict of guilty renders any error harmless beyond a reasonable doubt. In *Mechanik,* the Supreme Court assumed for the sake of argument that the simultaneous presence of two government witnesses before a federal grand jury violated Fed.R.Crim.P. 6(d).[13] The unauthorized presence in the grand jury room in *Mechanik* was a Drug Enforcement Administration agent who had investigated the case. The Supreme Court noted that Rule 6(d) was designed, in part, " 'to insure that grand jurors, sitting without the direct supervision of a judge, are not subject to undue influence that may come with the presence of an unauthorized person.' " 106 S.Ct. at 941 (quoting *Mechanik v. United States,* 735 F.2d 136, 139 (4th Cir.1984)). Despite the danger presented by the Rule 6(d) violation, the Court concluded that the petit jury's subsequent guilty verdict rendered harmless beyond a reasonable doubt any error in the grand jury proceeding connected with the charging decision. 106 S.Ct. at 942. The Court stated:

> [t]he Rule protects against the danger that a defendant will be required to defend against a charge for which there is no probable cause to believe him guilty.... But the petit jury's subsequent guilty verdict not only means that there was probable cause to believe that the defendants were guilty as charged, but that they are in fact guilty as charged beyond a reasonable doubt.

106 S.Ct. at 941–42.

The *Mechanik* Court distinguished *Vasquez v. Hillery,* ——— U.S. ———, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986), in which the Court had set aside a conviction because of racial discrimination in the composition of the grand jury that indicted the defendant. *Id.* 106 S.Ct. at 942 n. 1. The *Mechanik* opinion explained that *Vasquez* was based on the idea that racial discrimination is so pernicious that it could not be tolerated in the judicial system. The Court suggested, however, that *Vasquez* "ha[s] little force

---

12. According to Porter, the grand juror in question was unqualified as a matter of state law. He cites Fla.Stat.Ann. § 904.04(1)(b) and *Cruce v. State,* 100 So. 264 (1924), for this contention.

13. Fed.R.Crim.P. 6(d) provides:

   Who May Be Present. Attorneys for the government, the *witness* under examination, interpreters when needed and, for the purpose of taking the evidence, a stenographer or operator of a recording device may be present while the grand jury is in session, but no person other than the jurors may be present while the grand jury is deliberating or voting. (Emphasis added). This rule, by using the singular "witness" arguably prohibits the presence before the grand jury of more than one witness at a time.

outside the context of racial discrimination in the composition of the grand jury." *Id.*

Under the Supreme Court's reasoning in *Mechanik*, any error in the composition of the grand jury that indicted Porter was harmless. Assuming *arguendo* that Whalen's presence during grand jury deliberations violated Porter's due process rights, such an error was rendered harmless by Porter's subsequent conviction. As with the Fed.R.Crim.P. 6(d) violation at issue in *Mechanik*, Porter's claim rests on the idea that the grand jury should not be unduly influenced by unauthorized persons. Because we perceive no relevant distinction between the error in the instant case and that in *Mechanik*, we assume arguendo that Whalen's presence was error, but we hold the error was harmless.

Regarding Porter's claim of prosecutorial misconduct for failing to reveal Whalen's relationship to the victims, we conclude that any such error was also rendered harmless by Porter's subsequent conviction. Although we expressly do not decide whether prosecutorial misconduct in a grand jury setting is always rendered harmless by a petit jury's guilty verdict, we believe that *Mechanik* controls the facts of this case. We are not prepared to distinguish the claim of error in this case from *Mechanik*. Since the claim of prosecutorial misconduct in this case falls far short of the kind of egregious conduct that might be comparable to the racial discrimination involved in *Vasquez*, we need not decide whether egregious prosecutorial misconduct might in some case be governed by the *Vasquez* rule rather than the *Mechanik* rule. Thus, any prosecutorial misconduct during the grand jury proceedings in this case is harmless. Since Porter is unable to allege facts which, if true, would entitle him to relief on this issue, his request for an evidentiary hearing is denied with respect to this issue.

## IV. THE REMAINING CLAIMS

Porter raises six other claims on appeal.[14] Those claims are (1) a claim based upon *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), that Porter's Eighth and Fourteenth Amendment rights were violated by the failure of the jury to find that Porter intended to kill; (2) that Porter's rights were violated by the trial court's finding as an aggravating circumstance that the homicide was committed during the commission of a robbery; (3) that execution by electrocution violates the Eighth Amendment; (4) that the trial judge's imposition of the death penalty over the jury's recommendation of life imprisonment violates the Constitution; (5) that the statutory aggravating factor of Fla.Stat.Ann. § 921.141(5)(h) (that the crime was especially heinous, atrocious or cruel) impermissibly channels the sentencer's discretion and thereby renders the death penalty arbitrary and capricious; and (6) a claim based upon *Grigsby v. Mabry*, 758 F.2d 226 (8th Cir.1985), *rev'd Lockhart v. McCree*, — U.S. —, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986), that the jury was unconstitutionally conviction prone because potential jurors were excused based on their views on the death penalty. Of these claims, only number (4) was raised on direct appeal in state court. The state asserts that claims (1), (2), (3), (5) and (6) are barred from federal habeas review under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Porter does not dispute that he procedurally defaulted on these issues nor does he attempt to show "cause and prejudice" as *Sykes* requires in order that Porter be entitled to have the merits of these claims heard. We hold that these claims are barred from review. *See Palmes v. Wainwright*, 725 F.2d 1511, 1525 (11th Cir.), *cert. denied*, 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156

---

**14.** Porter has not briefed two of the issues he asserted in the district court: the claim that the death penalty has been imposed in an arbitrary, discriminatory manner, and insufficiency of the evidence. These claims are deemed abandoned. *Gorham v. Wainwright*, 588 F.2d 178, 179 n. 2 (5th Cir.1979).

(1984) (*Sykes* bar applies if issue not raised on direct appeal in state court).[15]

Regarding Porter's claim that the trial judge's imposition of the death sentence over the jury's recommendation of life is unconstitutional, this contention is foreclosed by the Supreme Court's decision in *Spaziano v. Florida*, 468 U.S. 447, 104 S.Ct. 3154, 3165, 82 L.Ed.2d 340 (1984).

## V.  CONCLUSION

Porter has alleged facts sufficient to entitle him to an evidentiary hearing on the issues of whether his attorneys were ineffective for failing to investigate and present certain mitigating evidence at sentencing, and whether Porter's trial attorney was laboring under an actual conflict of interest which adversely affected that attorney's performance.  As discussed above, Porter's other claims are without merit.  The judgment of the district court is, therefore, affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

HILL, Circuit Judge, concurring in part and dissenting in part:

I respectfully dissent from the opinion of the court in Parts I and II and so much of Part V as concludes that a remand for an evidentiary hearing is necessary.  I concur in Parts III and IV and the remainder of Part V.

In Part I, our panel concludes that there must be a remand to the district court for an evidentiary hearing to determine whether or not Porter's trial counsel rendered ineffective service at sentencing and at re-

sentencing.  To put this issue into proper focus it is important to bear in mind these things: First, Porter was sentenced in 1978 and resentenced in 1981.  Years later, with the benefit of hindsight, it is now suggested that counsel at Porter's resentencing should have presented evidence of Porter's background.  What Porter proffers now as the better course for trial counsel to have taken would have been a course, I submit, calculated to have produced the death penalty.  Second, at sentencing, trial counsel were appearing before the same jurors who had just convicted Porter of two gruesome, calculated and premeditated murders.  On the day of the murders prior to the commission of the crimes, Porter had announced his intention to break into and enter a home for the purpose of burglary and his intention to leave no witnesses.  Pursuant to that announced plan, he had broken into the home of Mr. and Mrs. Walwrath, 78 and 62 years old, respectively, had beaten them unmercifully and had "finished them off" by strangling each with an electric cord left tied tightly around their necks. He had ransacked the dwelling, stealing objects of value in the house and transporting them away in the victim's automobile which he also stole.  Third, it should be borne in mind that counsel now charged with inadequate assistance persuaded that same sentencing jury to recommend life imprisonment, the best recommendation obtainable from the jury after the conviction.

Although trial counsel achieved total success before the jury at sentencing, they did not succeed with the trial judge who overrode the jury recommendation and sentenced Porter to death.  Porter's present

15.  Claims (1), (2), (3), (5) and (6) are also clearly foreclosed on their merits.  There is no doubt that Porter intended to kill the victims and thus, Porter's claim based on *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), is without merit.  *See Ross v. Kemp*, 756 F.2d 1483, 1488 (11th Cir.1985) (en banc).  Porter's claim that the Constitution forbids the trial court's finding that the murders were committed in the course of a robbery as an aggravating circumstance has been rejected by this circuit. *Henry v. Wainwright*, 721 F.2d 990, 996 (11th Cir.1983), *cert. denied*, 466 U.S. 993, 104 S.Ct.

2374, 80 L.Ed.2d 846 (1984).  Porter's claim that electrocution is cruel and unusual punishment was rejected in *Sullivan v. Dugger*, 721 F.2d 719 (11th Cir.1983).  Florida's statutory aggravating factor that a murder may be especially heinous, atrocious or cruel is not unconstitutionally vague or ambiguous.  *Proffitt v. Florida*, 428 U.S. 242, 255–56, 96 S.Ct. 2960, 2968, 49 L.Ed.2d 913 (1976).  Finally, Porter's claim based on *Grigsby v. Mabry*, 758 F.2d 226 (8th Cir.1985), has been rejected by the Supreme Court.  *Lockhart v. McCree*, —— U.S. ——, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986).

habeas counsel have discovered that which is well-nigh universally so—trial counsel might have presented the case differently at sentencing. However, after all these years, the only evidence to which habeas counsel points which was not used by trial counsel is evidence which trial counsel would have been ill-advised to have used. Counsel did not, at sentencing, present to the jury the whole story of Porter's life leading up to his commission of these murders. Had that subject been opened up, it could not have been closed before the jury would have been made aware that Porter had been constantly anti-social since early childhood. It is now asserted that Porter's trial counsel should have pointed out to the jury that this double murderer had been a poor student in elementary school, a discipline problem, and that his high school years were spent in various juvenile detention centers because he was unmanageable in a normal environment. It is contended that the jury should have been told, on Porter's behalf, that in adulthood he was a heavy drug user and that, by his own admission, his adult anti-social activities and felony incarceration destroyed his marriage. This life story, it is contended, should have been presented together with evidence that Porter was intelligent and suffered from no neurological or cognitive defects. The notion that such a showing of rehabilitative failure over the years would have been mitigating seems premised upon the notion that this trial judge could have been persuaded that Mr. and Mrs. Walwrath were not battered and ultimately strangled to death by the defendant but, rather, by the social environment in which he had lived.

The record satisfies me that sentencing counsel's failure to produce the evidence now tendered by habeas counsel was a tactical decision and a correct one. It is clear that counsel and the trial judge at sentencing and resentencing were fully aware that such testimony was admissible. Indeed, before resentencing, counsel had obtained from the trial judge an order that testimony by family members and, specifically, Porter's mother would be accepted.

Then, in a move that must have been a surprise to the state prosecutor, Porter's attorney successfully persuaded the judge that the state supreme court's remand for resentencing limited both the state and the defendant to impeachment of one witness who had testified by deposition. That argument was deliberately made by counsel who had clearly considered calling Porter's mother and other family members. That this course of action was a tactical decision is abundantly clear.

Even if the omission of this testimony was not a tactical decision, we should not order a hearing on this subject unless we are persuaded that the omission creates a reasonable probability that the outcome of the proceeding would have been different had the evidence not been omitted. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Whether the lifelong anti-social characteristics of Porter were omitted at sentencing as a result of tactical decision or oversight, I could not conclude that the omission was, under that standard, prejudicial to Mr. Porter. I find myself in agreement with the Florida Supreme Court: "The current speculation that informing the judge and jury of Porter's long history of juvenile delinquency and drug abuse would have mitigated the sentence is merely that, speculation. It is at least as likely that introducing this material would have damaged Porter as that it would have helped him." *Porter v. State*, 478 So.2d 33, 35 (Fla.1985). Additionally, in light of the three aggravating factors found by the trial judge, the proffered mitigating evidence would not have affected the trial judge's decision. *Cf. Francois v. Wainwright*, 763 F.2d 1188 (11th Cir.1985) (evidence of defendant's impoverished childhood would not have changed sentencing outcome in light of aggravating circumstances).

In Part II, the panel concludes that an evidentiary hearing is required because of Porter's mere assertion that his trial counsel was subject to a conflict of interests at the trial. I respectfully disagree. The short response to that assertion is that

petitioner does not allege that his trial counsel was laboring under a conflict; he merely asserts that it is possible that a conflict may have existed.

Trial attorney Widmeyer was a public defender. He had been assigned to represent one Matha Thomas. While Thomas was incarcerated, appellant Porter was placed in the same jail. Porter confessed and boasted to Thomas that he had killed the two victims. When the prosecution learned of this, a statement was taken from Thomas. Attorney Widmeyer was assigned the defense of petitioner Porter. He learned that Thomas had reported Porter's incriminating statements to the prosecution. Widmeyer called this to the attention of the court and was permitted to withdraw as counsel for Thomas.

At trial, Widmeyer forcefully cross-examined Thomas. In the eight years since Porter's original trial, it has never been alleged that there was any question which could have been put to Thomas by Widmeyer not asked because of Widmeyer's brief representation of Thomas. It is earnestly argued that there *might* have been a conflict and that, if there were, the conflict could *possibly* have inhibited Widmeyer's cross-examination. Defendant, without any factual basis, merely alleges a hypothetical conflict existed. *See Stevenson v. Newsome,* 774 F.2d 1558, 1561 (11th Cir. 1985) ("The possibility of conflict does not rise to the level of a sixth amendment violation."), *cert. denied,* — U.S. —, 106 S.Ct. 1476, 89 L.Ed.2d 731 (1986). Defendant has failed to point to any "actual conflict of interest [which] adversely affected his lawyer's performance." *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). Appellant does not seek a hearing to prove the existence of a conflict; he seeks a hearing as an investigation aid to find out, nearly a decade after the event, if there might be some evidence upon which he could assert the existence of a conflict. In my view, that is not the purpose of a hearing on an issue in habeas corpus.

Were a conflict of interest alleged upon some reasonable basis, I should not hesitate to join in requiring a hearing. The existence of an actual conflict has not been alleged. In summary, the allegation of the petitioner's complaint fails to allege sufficiently disputed facts so as to merit an evidentiary hearing. Such a hearing will have no impact upon the viability of Porter's constitutional claims. *See Hill v. Lockhart,* 731 F.2d 568, 573 (8th Cir.1984), *aff'd,* — U.S. —, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Guice v. Fortenberry,* 661 F.2d 496, 503 (5th Cir.1981) (en banc). I respectfully dissent from this remand.