653 So.2d 374 (1995)
Raleigh PORTER, Appellant,
v.
STATE of Florida, Appellee.
Raleigh PORTER, Petitioner,
v.
Harry K. SINGLETARY, Respondent.
Nos. 85410, 85404.
Supreme Court of Florida.
March 28, 1995.
*376 Martin J. McClain, Chief Asst. CCR and Todd G. Scher, Asst. CCR, Office of the Capital Collateral Representative, Tallahassee, for appellant/petitioner.
Robert A. Butterworth, Atty. Gen. and Robert J. Landry, Asst. Atty. Gen., Tampa, for appellee/respondent.

CORRECTED OPINION
PER CURIAM.
Raleigh Porter, a prisoner on death row, appeals the trial court's denial of his second motion for postconviction relief and a stay of execution. Porter also petitions this Court for a writ of habeas corpus and/or a motion to reopen direct appeal. We have jurisdiction. Art. V, § 3(b)(1), (9), Fla. Const. We affirm the trial court's denial of relief and deny the habeas petition and motion to reopen direct appeal.
Porter was convicted of two counts of first-degree murder. The jury recommended life, but the trial court sentenced him to death. On appeal, this court affirmed the convictions but remanded for resentencing due to a Gardner[1] violation. Porter v. State, 400 So.2d 5 (Fla. 1981). On remand, the trial court again imposed the death penalty, and this Court affirmed. Porter v. State, 429 So.2d 293 (Fla.), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983).
The governor signed Porter's first death warrant in September 1985, and Porter filed a 3.850 motion raising eleven issues, including the claim that trial counsel had a conflict of interest. The trial court denied relief, and this Court affirmed. Porter v. State, 478 So.2d 33 (Fla. 1985).
Porter subsequently sought federal habeas relief. The United States District Court for the Middle District of Florida denied Porter's petition without an evidentiary hearing. On appeal, the United States Court of Appeals for the Eleventh Circuit affirmed in part but granted a stay of execution and remanded for an evidentiary hearing on the issues of whether trial counsel had an actual conflict of interest and whether resentencing counsel rendered ineffective assistance of counsel. Porter v. Wainwright, 805 F.2d 930 (11th Cir.1986), cert. denied, 482 U.S. 918, 107 S.Ct. 3195, 96 L.Ed.2d 682 (1987), and cert. denied, 482 U.S. 919, 107 S.Ct. 3196, 96 L.Ed.2d 683 (1987). The court also found several of Porter's claims, including a claim that the heinous, atrocious, or cruel aggravator impermissibly channels the sentencer's discretion and thereby renders the death penalty arbitrary and capricious, were procedurally barred from federal habeas review pursuant to Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Porter, 805 F.2d at 942.
After the federal district court held an evidentiary hearing on the conflict of interest and ineffective assistance of counsel issues in October 1988, Porter filed a petition for a writ of habeas corpus in this Court. We denied relief. Porter v. Dugger, 559 So.2d 201 (Fla. 1990). The federal district court then denied Porter's federal petition for habeas corpus. Porter v. Dugger, 805 F. Supp. 941 (M.D.Fla. 1992). On remand from the Eleventh Circuit, the federal district court also considered and rejected several new issues raised by Porter. Id. The Eleventh Circuit affirmed the federal district court's denial of relief. Porter v. Singletary, 14 F.3d 554 (11th Cir.), cert. denied, ___ U.S. ___, 115 S.Ct. 532, 130 L.Ed.2d 435 (1994).

*377 3.850 Motion

On March 1, 1995, Governor Chiles signed Porter's second death warrant. Porter filed an application for a stay of execution and an emergency 3.850 motion in the trial court raising the following claims: (1) Porter was denied adversarial testing at the guilt and sentencing phases of his trial because Stephan Widmeyer, Porter's trial counsel, was burdened by an actual conflict of interest, in that he represented State witness Larry Schapp or State witness Matha Lee Thomas while representing Porter; (2) Porter was denied adversarial testing at the guilt and sentencing phases of his trial because critical exculpatory impeachment evidence establishing a deal between Thomas and the State was not disclosed to defense counsel; (3) no adversarial testing occurred because Wayne Woodward, who represented Porter at resentencing, prosecuted Porter for buying/receiving stolen property in 1976 and thus was burdened by a conflict of interest; and (4) newly discovered evidence establishing Porter's good conduct in prison and his rehabilitation requires the trial court to impose a life sentence because it constitutes mitigating evidence which, had it been presented at the time of sentencing, would have precluded an override of the jury's life sentence. After hearing and considering argument of counsel, the trial court, on March 23, 1995, entered an order stating:
a. Defendant's motion brought pursuant to Rule 3.850 is barred by the one year time limitation imposed by Rule 3.850(b) in all cases in which a death sentence has been imposed. The Court further finds that the Defendant has failed to comply with Rule 3.850(b)(1) in that the Defendant has failed to demonstrate that the facts on which the claim is predicated were unknown to him or to his attorney and could not have been ascertained by the exercise of due diligence.
b. The Court also finds that this is a second or successive motion which is barred by the express provisions of Rule 3.850(f).
We affirm.
Because the present motion is successive and was filed after the expiration of the time limits set forth in rule 3.850, Porter's claims supporting the imposition of a life sentence must be based on the existence of newly discovered evidence. We find the issues raised in Porter's 3.850 motion as well as the new issue Porter asserts in this appeal are procedurally barred because the evidence upon which they are based does not qualify as newly discovered. Rule 3.850 expressly provides:
No other motion shall be filed or considered pursuant to this rule if filed ... more that 1 year after the judgment and sentence become final in a capital case in which a death sentence has been imposed unless it alleges that
(1) the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence... .
See also Scott v. Dugger, 604 So.2d 465, 468 (Fla. 1992) (quoting Hallman v. State, 371 So.2d 482, 485 (Fla. 1979)); Jones v. State, 591 So.2d 911, 915-16 (Fla. 1991).
We begin by addressing an issue raised in this appeal which was not presented to the judge in this motion. Porter claims that the original trial judge's statement in a newspaper interview, the contents of which were published on March 23, 1995, indicating that the trial judge had already decided to sentence Porter to death before receiving the jury's advisory sentence, establishes that Porter's life recommendation was overruled by a judge who was biased in favor of the death penalty. However, even accepting the assertion about the judge's statement in the interview as true, any claim based upon that statement is procedurally barred. Information upon which Porter claims bias of the trial judge has long been available to Porter. In fact, Porter has raised the issue of judicial bias on several prior occasions.[2] The record *378 clearly demonstrates that on November 30, 1978, the trial judge entered a judgment and sentence stating that Porter was to be executed for both Count I and Count II although the jury did not recommend a sentence for each count until December 1, 1978. The newspaper article says nothing more than what was already in the original 1978 sentencing order. The 1978 sentence has since been reversed. Porter's present attack is based upon the 1981 sentencing order, but we find nothing demonstrating that the newspaper article pertains to the 1981 sentencing.
With regard to the first claim Porter raised in his 3.850 motion to the trial court, Porter asserts that a recent affidavit of Widmeyer, Porter's trial counsel, provides newly discovered evidence on the issue of whether Widmeyer had an actual conflict of interest in representing both Porter and Schapp on separate and distinct charges. According to Widmeyer's affidavit, he has no independent recollection of representing Schapp. Only after reviewing court records from the Circuit Court of Charlotte County was Widmeyer able to state that he had represented Schapp on a charge of driving while intoxicated beginning in July 1978. This charge resulted in a hearing on August 24, 1978, in which Schapp entered a negotiated settlement of the charges with the State. Widmeyer's affidavit further states that on August 22, 1978, he conducted an intake interview at the Charlotte County Jail with Porter, who had been arrested and charged with capital murder earlier that day.
We agree with the trial court that the court records upon which the Widmeyer affidavit is based and, in turn, upon which Porter's claim is based do not qualify as newly discovered evidence pursuant to rule 3.850. These court records pertain to a key adverse witness whose testimony was the subject of this Court's original reversal in this case. Additionally, the State points out that Schapp's deposition reveals a potential connection between Schapp and Widmeyer.[3] Of course, the deposition as well as the court records which reveal Widmeyer's representation of Schapp are public records and have been continually available in Charlotte County throughout all post-conviction proceedings. We therefore conclude that Widmeyer's representation of Schapp was information available to Porter upon diligent search and thus cannot serve as a basis for relief.
Moreover, even if we accepted the assertions in respect to Widmeyer's representation of Schapp as being based upon newly discovered evidence, we find that Porter failed to effectively allege or demonstrate that an actual conflict of interest affected Widmeyer's performance. See Porter, 14 F.3d at 560-61 (quoting Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)); Gorby v. State, 630 So.2d 544, 546 (Fla. 1993) (same), cert. denied, ___ U.S. ___, 115 S.Ct. 99, ___ L.Ed.2d ___ (1994). The only allegations Porter makes are that Widmeyer represented Schapp in a negotiated settlement hearing on August 24, 1978, and represented Porter at an intake hearing on August 22, 1978.
As part of this point, Porter further asserts that a police report contained a statement that the assistant state attorney intended to charge Schapp as an accessory after the fact and that a bond of $25,000 should be placed on Schapp as a result of his potential involvement in the episode for which Porter was charged with murder. Porter claims the information regarding these charges came from a police report contained in a recently "reconstructed" prosecutor's file but offers no further explanation of why the police report should be considered newly discovered evidence. We do not accept the police report as newly discovered evidence upon which this 3.850 motion can be based.
Porter asserts that the failure to disclose that Schapp was booked as an accessory after the fact violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We do not agree. Even if we accepted the police report as newly discovered *379 evidence in evaluating Porter's Brady claim, we must still determine whether the allegedly withheld evidence is material. Evidence is material "only if there is a reasonable possibility that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985); Gorham v. State, 597 So.2d 782 (Fla. 1992). Porter's assertions that Schapp was charged and released do not meet this test of materiality.
No booking records indicate that Schapp was actually booked as an accessory after the fact so Porter relies upon the above statement in the police report in support of this contention. He then argues that the fact that Schapp was booked gives rise to an inference that Schapp made a deal with the State for his release without providing anything further to establish that charges were brought against Schapp or discharged. The statement in the police report indicating that Schapp was charged only serves as a basis for Porter's speculative inference that Schapp was in fact booked and then released as part of a deal about which there is no evidence. Stacking of inferences does not pass Brady scrutiny.
Porter raised the issue of Widmeyer's conflict of interest resulting from his representation of Thomas in a prior 3.850 motion, which was the subject of this Court's decision in Porter v. State, 478 So.2d 33 (Fla. 1985). The federal courts also addressed and rejected this claim. Porter v. Dugger, 805 F. Supp. 941 (M.D.Fla. 1992), aff'd, Porter v. Singletary, 14 F.3d 554 (11th Cir.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 532, 130 L.Ed.2d 435 (1994). The additional evidentiary assertions made in Porter's present 3.850 motion with respect to the alleged conflict arising out of Widmeyer's representation of Thomas do not provide a basis for changing this Court's determination that the alleged conflict of interest was not sufficient grounds for relief. See Porter, 478 So.2d at 35-36 (Fla. 1985). Nor do these allegations overcome the express testimony given by Thomas in the federal evidentiary hearing on his petition for writ of habeas corpus. Thomas testified that he was promised nothing in return for his testimony against Porter. Porter, 14 F.3d at 561.
With regard to Porter's third 3.850 claim in which he alleges that Woodward, Porter's resentencing counsel, was burdened by an actual conflict of interest, we again find that Porter has not presented any newly discovered evidence on this matter. Woodward prosecuted Porter, and that prosecution was a matter of public record since 1976. Again, this type of evidence, which is open to public inspection, does not qualify as newly discovered evidence for purposes of this 3.850 motion. Accordingly, we find that this claim is untimely and procedurally barred.
Porter's fourth 3.850 claim, alleging that his good prison conduct constitutes newly discovered mitigating evidence in accordance with our decision in Scott v. Dugger, 604 So.2d 465 (Fla. 1992), is without merit. We do not find that the claim presented in Scott is analogous to the claim presented here, and we therefore reject Porter's reliance on that decision. In Scott, we held that "in a death case involving equally culpable codefendants the death sentence of one codefendant is subject to collateral review under rule 3.850 when another codefendant subsequently receives a life sentence." 604 So.2d at 469. We considered the codefendant's subsequent life sentence newly discovered evidence due to the nature of the mitigator. There was extensive evidence in the record establishing that both defendants were equally culpable participants in the crime, but Scott's codefendant only received life after this Court had affirmed Scott's death sentence.
The Scott decision should not be extended beyond its factual situation. Specifically, it should not be read to mean that events other than those in Scott which occur after a death sentence is imposed are to be considered aggravating or mitigating factors. See Steinhorst v. Singletary, 638 So.2d 33 (Fla. 1994) (trial judge's affidavit taken fifteen years after trial, which stated that he believed the codefendants were equally guilty and deserved the same punishment, was not a sufficient basis for overturning one codefendant's death sentence after second codefendant's *380 death sentence was overturned on appeal). Moreover, newly discovered evidence, by its very nature, is evidence which existed but was unknown at the time of sentencing. Porter's conduct in prison since his sentencing obviously does not meet these criteria.
Based upon the foregoing analysis, we affirm the trial court's denial of relief.

Habeas Petition
Porter raises three issues in his petition for a writ of habeas corpus: (1) the trial court's override of the jury's life sentence should be reversed and a life sentence imposed;[4] (2) the heinous, atrocious, or cruel aggravating factor is unconstitutionally vague because the sentencer did not apply a narrowing construction of the aggravator as required by Maynard v. Cartwright, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), and this Court has failed to cure the vagueness; and (3) the execution of a death sentence after keeping the condemned on death row for almost two decades constitutes cruel and unusual punishment.
Porter's first claim was raised on direct appeal, in his first 3.850 motion, and in his prior petition for a writ of habeas corpus in this Court.[5] As we stated when we rejected this claim in Porter's first petition for habeas corpus, habeas is not to be used to relitigate issues that have been determined in a prior appeal. Porter, 559 So.2d at 203. Nor can Porter use a different argument to relitigate this same issue. See Dobbert v. State, 456 So.2d 424 (Fla. 1984); Sullivan v. State, 441 So.2d 609 (Fla. 1983). This claim is therefore procedurally barred.
Porter's second claim is also procedurally barred. In seeking federal relief, Porter admitted that his second claim was procedurally barred because he failed to raise the issue on direct appeal in state court. See Porter, 805 F.2d at 942.
Finally, we find Porter's third claim without merit. See Lackey v. Texas, ___ U.S. ___, 115 S.Ct. 1421, 131 L.Ed.2d 304 (1995) (memorandum of Stevens, J. respecting denial of certiorari) (similar issue); Hitchcock v. State, 578 So.2d 685 (Fla. 1990), reversed on other grounds, ___ U.S. ___, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992). We therefore deny Porter's petition for a writ of habeas corpus.
It is so ordered.
NO MOTION FOR REHEARING WILL BE ALLOWED.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977).
[2] On direct appeal, Porter attempted to raise the trial judge's bias by introducing an affidavit of Widmeyer stating that the judge had brass knuckles and a gun with him during sentencing. This Court struck that affidavit. Porter also raised the issue of judicial bias on his initial habeas petition to this Court. See Porter, 559 So.2d at 202-3. We have considered the affidavit filed by Porter on March 28, 1995, as supplementing the record.
[3] Exhibit 19, Appendix to Porter's Emergency Motion to Vacate Judgment of Conviction and Sentence and Request for Stay of Execution.
[4] In this claim, Porter argues the override should be reversed because (a) this Court's determination in Porter, 559 So.2d at 203, holding that the law of the case precludes subsequent review of this issue, violates Tedder v. State, 322 So.2d 908 (Fla. 1975); and (b) the trial judge's actions in the courtroom and his entry of a sentence before the penalty phase demonstrate he was biased in favor of the death penalty.
[5] This issue was also raised and rejected in the federal courts. See Porter v. Wainwright, 805 F.2d 930, 943 (11th Cir.1986); Porter v. Dugger, 805 F. Supp. 941, 948-49 (M.D.Fla. 1992), aff'd, Porter v. Singletary, 14 F.3d 554, 562 (11th Cir.1994); cert. denied, ___ U.S. ___, 115 S.Ct. 532, 130 L.Ed.2d 435 (1994).