United States Court of Appeals,

Eleventh Circuit.

No. 95-2389.

Raleigh PORTER, Petitioner-Appellant,

v.

Harry K. SINGLETARY, Jr., Respondent-Appellee.

March 31, 1995.

Appeal from the United States District Court for the Middle District of Florida. (No. 95-00109-CIV-FTM-17D), Elizabeth A. Kovachevich, Judge.

Before TJOFLAT, Chief Judge, ANDERSON and BLACK, Circuit Judges.

PER CURIAM:

This is an appeal from the district court's denial of Porter's successive petition for a writ of habeas corpus. The prior history of this case is set out in *Porter v. Singletary,* 14 F.3d 554 (11th Cir.1994), and *Porter v. Wainwright,* 805 F.2d 930 (11th Cir.1986). The instant proceedings began with Porter's Rule 3.850 action in state court. The state circuit court denied relief on March 23, 1995. Oral argument was heard in the Florida Supreme Court on March 28, 1995. The Florida Supreme Court denied relief on March 28. Porter immediately filed a petition for writ of habeas corpus in the district court. The district court denied same. Porter appeals.

Porter first claims that there has been a violation of the Cruel and Unusual Punishment Clause by keeping him on death row since his sentence in 1978. We note that Porter has proffered no evidence to establish that delays in his case have been attributable to negligence or deliberate action of the state. *See*

*Lackey v. Texas,* No. 94-8262, --- U.S. ----, --- S.Ct. ----, --- L.Ed.2d ----, 1995 WL 94096 (March 27, 1995) (Stevens, J.) (Memorandum respecting denial of certiorari on Eighth Amendment claim of petitioner who had spent 17 years on death row). Porter has not otherwise explained the cause of the delays in his case. Nor has he proffered any evidence to explain his delay in pursuing this claim. Under these circumstances, we conclude that this claim is barred by the abuse of the writ doctrine. We cannot conclude that Porter has demonstrated cause and prejudice or a miscarriage of justice. Alternatively, we conclude that Porter has failed to proffer sufficient facts to warrant relief or to warrant an evidentiary hearing.

Porter next claims that attorney Widmeyer, who represented him at his 1978 sentencing, was ineffective; he argues that Widmeyer labored under a conflict of interest because of his representation of state witness, Schapp. In his first federal habeas corpus petition, Porter claimed that Widmeyer was ineffective, but did not present this particular ground. We conclude that Porter's claim is barred by the abuse of the writ doctrine, and, the Florida Supreme Court having rejected this claim on the basis of a state procedural default, we conclude that this claim is also barred by a state procedural bar. We cannot conclude that Porter has demonstrated cause and prejudice or a miscarriage of justice. Porter has not demonstrated that the kind of investigation conducted in 1995, which uncovered the alleged conflict, could not have been done during the earlier litigation. Moreover, Widmeyer was a member of the local public defender

office, which would have handled many, if not most, of the criminal cases like Schapp's. In any event, Porter's claim is of doubtful merit. Porter makes two suggestions to satisfy the prejudice prong of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Porter suggests that Widmeyer, because of his prior representation of Schapp, could not adequately cross-examine Schapp to elicit his motivation for testifying against Porter—i.e., that he possibly could have been charged as an accessory after the fact. However, Widmeyer did in fact bring this out in his cross-examination of Schapp. Porter also suggests prejudice in that Widmeyer could not adequately cross-examine Schapp at the 1978 sentencing with respect to the sentencing judge's reliance upon Schapp's deposition testimony that Porter had discussed a plan to steal an automobile from newly-arrived residents and, if necessary, kill them. However, the Florida Supreme Court ordered a resentencing, *Porter v. State,* 400 So.2d 5, 7 (1981), and at the subsequent resentencing another attorney, Woodard, represented Porter. The stated purpose for the remand and resentencing was to afford Porter an opportunity to impeach Schapp. Thus, error, if any, was cured, and cannot now serve as prejudice.[1]

In addition, Porter seeks to strengthen his previously asserted claim that Widmeyer rendered ineffective assistance of counsel because of conflict of interest in having previously

---

[1]Porter also argues that the state violated *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to disclose the fact of Widmeyer's prior representation of Schapp and the fact of Schapp's susceptibility to an accessory-after-the-fact charge. However, those facts were either known to the defense or readily accessible.

represented state witness Thomas. This claim was asserted in Porter's previous federal habeas corpus proceeding. *See Porter,* 14 F.3d 554 (11th Cir.1994); *Porter,* 805 F.2d 930 (11th Cir.1986). Porter now asserts new facts which allegedly support that claim. He argues that Thomas' recent release of his attorney/client privilege enabled Porter to discover from attorney Norton new information. Widmeyer, a public defender, had been appointed to represent Thomas in connection with a July, 1978, charge of uttering a forged instrument. Widmeyer was also appointed to represent Porter on August 22, 1978. Without consulting Widmeyer, on August 25, 1978, Thomas gave a statement to the state prosecutor tending to incriminate Porter. Upon learning of Thomas' statement, Widmeyer informed the court and requested to withdraw as counsel for Thomas on September 1, 1978. *Porter,* 14 F.2d at 560. Upon Widmeyer's withdrawal, attorney Norton was appointed to represent Thomas. Porter has now learned from Norton that Norton received a telephone call at an unspecified time after his appointment informing him that no action would be taken in the Thomas case in the near future. Porter argues that this new fact strengthens the inference that there was a deal between the prosecution and Thomas to mitigate his pending criminal charges in exchange for his testimony against Porter. We conclude that the successive writ/abuse of the writ doctrine precludes our consideration of Porter's renewed claim. The Florida Supreme Court also invoked a state procedural bar. We cannot conclude that Porter has demonstrated cause and prejudice or a miscarriage of justice. We are not convinced that Porter has demonstrated that the alleged new

fact could not have been uncovered by the exercise of due diligence in the prior proceedings, for example in preparation for or at the October, 1988, evidentiary hearing in federal court. Moreover, we are doubtful that this alleged new fact sufficiently strengthens Porter's argument that there was a deal to warrant relitigation of the issue.[2]

Porter next claims that attorney Woodard rendered ineffective assistance of counsel at Porter's resentencing following the 1981 remand by the Florida Supreme Court. Porter suggests two grounds. The first ground suggested is the fact that Woodard was a law partner of attorney Norton in August 1978 when Norton succeeded Widmeyer as counsel for Thomas. The implication is that Woodard would be unable to adequately cross-examine Thomas at the resentencing because of his partner's prior representation of Thomas. We conclude that this argument is barred by the successive writ/abuse of the writ doctrine,[3] and that Porter has not established cause and prejudice or a miscarriage of justice.[4] The

---

[2]Porter also asserts recent discovery of the fact that the prosecutor, Berry, and Thomas enjoyed a friendly relationship. Porter argues that this fact also strengthens the inference that there was a deal between the prosecutor and Thomas. Again, Porter has not persuaded us that this fact could not have been discovered earlier by the exercise of due diligence, and thus we conclude that Porter has failed to establish cause and prejudice or a miscarriage of justice to overcome the successive writ/abuse of the writ bar.

[3]The Florida Supreme Court also invoked a state procedural bar, concluding that the alleged new facts underlying Porter's claims of conflict of interest on the part of Woodward are not newly-discovered evidence.

[4]For example, the fact that Norton was Woodard's law partner in August 1978, was brought out at the October 1988, federal evidentiary hearing.

second ground asserted to demonstrate ineffective assistance of counsel on the part of Woodard is the recently-discovered fact that Woodard himself prosecuted Porter in 1976. Woodard was at that time a member of the Charlotte County State Attorney's office. We conclude that this ground is barred by the successive writ/abuse of the writ doctrine, and that Porter has not demonstrated cause and prejudice or a miscarriage of justice.

Finally, Porter claims that he was denied his constitutional right to an impartial sentencing judge. Porter supports this claim with a proffer of crucial new evidence as follows: On Tuesday morning, March 28, 1995, counsel for Porter received a telephone call from Jerry Beck, the Clerk of the Glades County Circuit Court in which Porter was sentenced. The Clerk stated that he had some information regarding Porter's case, and that he was informing both the state attorney's office and Porter's counsel. The Clerk stated that either before or during Porter's trial, the judge presiding over the case, the Honorable Richard M. Stanley, stopped by the Clerk's Office early one morning, and the judge and the Clerk drank coffee together. The judge stated that he had changed the venue in the Porter trial from Charlotte County to Glades County because there had been a lot of publicity and Glades County "had good, fair minded people here who would listen and consider the evidence and then convict the son-of-a-bitch. Then, Judge Stanley said, he would send Porter to the chair." Affidavit of Beck. [5] This

_____

[5]The March 28, 1995, opinion of the Florida Supreme Court merely acknowledges consideration of this proffer. The proffer to the Florida Supreme Court was in the form of an affidavit of counsel reporting on the telephone conversation of that morning. The proffer has now been supplemented with an affidavit of Clerk

evidence of predisposition finds some corroboration in a proffered statement by Judge Stanley to news reporters.[6]

Porter argues that the proffered evidence, if proved, would establish that his sentencing judge had made up his mind to sentence Porter to death before the penalty proceedings began. Porter argues that such predisposition violated his constitutional right to a fair and impartial tribunal.

In the Florida sentencing scheme, the sentencing judge serves as the ultimate factfinder. If the judge was not impartial, there would be a violation of due process. The law is well-established that a fundamental tenet of due process is a fair and impartial tribunal. *Marshall v. Jerrico, Inc.,* 446 U.S. 238, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980). There the Supreme Court said:

> The Due Process Clause entitles a person to an impartial

---

Beck himself. *See Zeigler v. State,* 452 So.2d 537, 540 (Fla.1984) (evidentiary hearing required upon new evidence adduced in collateral proceedings that trial judge made a pretrial statement that if the prosecutor got a first degree murder conviction, "I'll fry the son-of-a-bitch").

[6]On Thursday, March 23, 1995, an article appeared in the *Gainesville Sun* newspaper reporting on a recent interview with Judge Stanley, who is now retired. The article quotes Judge Stanley as saying that when the judgment was brought out by the jury finding him guilty, "I knew in my own mind what the penalty should be, and I sentenced him to it." In addition to the foregoing, Porter has proffered the following evidence. A *Miami Herald* news reporter telephoned his attorney on Friday, March 24, 1995, and counsel returned the call and talked by telephone with the reporter that evening. The reporter stated that Judge Stanley submitted to another interview with reporters on Thursday evening, March 23, 1995, in which he allegedly again admitted his premature determination of Porter's sentence, and also stated that he had engaged in a debate with foes of the death penalty around the time of Porter's trial. In that debate, Judge Stanley stated that, in answer to the question whether he would be willing to pull the switch, he had answered that he would so long as he could at the sentencing reach down his leg, pull up his pistol, and shoot them between the eyes.

and disinterested tribunal in both civil and criminal cases. This requirement of neutrality in adjudicative proceedings safeguards the two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decisionmaking process.... The neutrality requirement helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law.... At the same time, it preserves both the appearance and reality of fairness. "generating the feeling, so important to a popular government, that justice has been done," ... by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him.

446 U.S. at 242, 100 S.Ct. at 1613 (citations omitted).

The Supreme Court of Florida found that this claim was procedurally barred. *Porter v. State,* slip at 6, --- So.2d ----, ----, 1995 WL 129665 (Fla. Mar. 28, 1995). The district court agreed. In addition, the district court held that the claim was barred by the successive writ/abuse of the writ doctrine. In either case, Porter is entitled to have his claim heard only if he can establish cause and prejudice or a fundamental miscarriage of justice. *McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (holding that the cause and prejudice standard enunciated in *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), for surmounting a procedural bar also applies in the successive writ/absence of the writ context).[7]

The Florida Supreme Court concluded that the information upon

---

[7]The district court's discussion of abuse of the writ referred to the analogous doctrine of law of the case. District Court opinion, March 30, 1995, at 19. However, the law is clear that the burden on Porter is to satisfy the cause and prejudice standard in order to surmount the abuse of the writ bar. In any event, there would be little difference here between the application of the law of the case and the application of the cause standard.

which Porter claims bias has long been available, *Porter,* slip op. at 6, --- So.2d at ---- (Fla. Mar. 28, 1995), thus implying that Porter had not satisfied the Florida concept which corresponds to the federal "cause" (i.e., unknown facts which could not have been ascertained by the exercise of due diligence). *Id.* at 5-6, --- So.2d ---- - ----. The Florida Supreme Court emphasized that Porter had raised an earlier claim of judicial bias based on the fact that the judge's sentencing order was dated November 30, 1978, notwithstanding the fact that the jury's sentencing recommendation was not returned until December 1, 1978. *Id.* at 6 and n. 2, --- So.2d at ---- and n. 2. In similar vein, the district court emphasized that Porter was aware of Judge Stanley's wearing brass knuckles and a gun at the sentencing hearing (where sentence was pronounced) and had raised that on direct appeal. District Court Order March 30, 1995, at 22. We agree that the record reveals that Porter was on early notice of those facts. However, the brass knuckles and gun were readily explained by the State in the earlier proceedings as being the result of security precautions, and the November 30 date was explained by the State as a clerical error. That evidence is not comparable at all to the evidence now proffered. Unlike the newly proffered evidence, it fell far short of overcoming the presumption of regularity and supporting a claim of judicial bias.[8]

---

[8]The district court also stated that Judge Stanley's activities in support of the death penalty "were public knowledge and Petitioner had access to that information." District Court opinion, March 30, 1995, at 22-23. However, nothing in this record supports the district court's statement. The record does not indicate that the single debate referred to in Porter's proffer was part of a pattern or was otherwise a matter of public

Our analysis focuses upon "cause." In *McCleskey v. Zant,* 499 U.S. 1454, 111 S.Ct. 1454, the Supreme Court described the cause standard. Cause requires a showing of some external impediment preventing counsel from constructing or raising the claim. For example, the external impediment might be "government interference or the reasonable unavailability of the factual basis for the claim." 499 U.S. at 497, 111 S.Ct. at 1472. The fact that petitioner did not possess or could not reasonably have obtained certain evidence falls to establish cause if other known or discoverable evidence could have supported the claim in any event.[9] *Id.* The Court elaborated: The cause standard is "based on the principle that a petitioner must conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief in the first federal habeas petition." *Id. See also Alderman v. Zant,* 22 F.3d 1541, 1551-52 (11th Cir.1994).

In light of the Canons governing judicial conduct, we do not believe that an attorney conducting a reasonable investigation would consider it appropriate to question a judge,[10] or the court personnel in the judge's court, about the judge's lack of impartiality. Canon 3E(1) requires a judge to *sua sponte*

---

knowledge. We cannot assume with no record evidence that a judicial officer would conduct himself in disregard of ethical standards.

[9]Thus, the fact that McCleskey could not have reasonably discovered a particular document was irrelevant, because he could have discovered the evidence that the document recounted. *Id.* at 1472-73.

[10]We note that the law affirmatively shields judges from such questioning. *United States v. Morgan,* 313 U.S. 409, 422, 61 S.Ct. 999, 1004-05, 85 L.Ed. 1429 (1941); *State v. Lewis,* --- So.2d ----, 1994 WL 585665 (Oct. 27, 1994).

disqualify himself if his impartiality might reasonably be questioned.[11] The Commentary to Canon 3E(1) provides that a judge should disclose on the record information which the judge believes the parties or their lawyers might consider relevant to the question of disqualification. We conclude that both litigants and attorneys should be able to rely upon judges to comply with their own Canons of Ethics. A contrary rule would presume that litigants and counsel cannot rely upon an unbiased judiciary, and that counsel, in discharging their Sixth Amendment obligation to provide their clients effective professional assistance, must investigate the impartiality of the judges before whom they appear. Such investigations, of course, would undermine public confidence in the judiciary and hinder, if not disrupt, the judicial process—all to the detriment of the fair administration of justice.

Thus, it appears from Porter's proffer that Judge Stanley made wholly unanticipated and unpredictable remarks to the Clerk of Court during the trial, and that he has recently made similarly unanticipated and unpredictable remarks to reporters.[12] This is not

---

[11]Indeed, the impartiality of the judiciary is the most central concept of the Canons of Ethics. In addition to the Canon cited in the text, *see also* Canon 1 (imposing upon judges the obligation of preserving the integrity and independence of the judiciary), Canon 2 (public confidence in the impartiality of the judiciary), Canon 3B(5) (obligation to perform judicial duties without bias or prejudice), Canon 4A(1) (obligation with respect to quasi-judicial activities not to cast reasonable doubt on impartiality), Canon 5A(1) (same with respect to extra-judicial activities). The Canon citations are to the Florida Code of Judicial Conduct. West's F.S.A.Code of Jud.Conduct 1995.

[12]Canon 3B(9) requires a judge to make no public comment that might reasonably be expected to affect the outcome or fairness of a case pending or impending in any court (and requires similar restraint with respect to nonpublic comments),

a case involving merely an uncorroborated news report or rumor. Nor does this case involve a conclusory proffer of judicial bias. In this case, the proffer is that the person who was then and continues to be the Clerk of the Court, an officer of the court, has come forward *sua sponte* with specific and ostensibly reliable evidence that the judge had a fixed predisposition to sentence this particular defendant to death if he were convicted by the jury. The proffer is supported by the sworn affidavit of the Clerk. We conclude that Porter has proffered sufficient evidence to warrant an evidentiary hearing on the issue of whether he has established cause to surmount the abuse of the writ doctrine and the state procedural bar. Therefore, we must remand this case to the district court for an evidentiary hearing to inquire into whether Porter or his counsel, from time to time, had knowledge that Judge Stanley made the alleged comment to Clerk Beck, or whether Porter or his counsel had other similar knowledge to put them on notice of bias on the part of Judge Stanley.

If, on remand, Porter satisfies the cause standard[13] of *Wainwright v. Sykes,* then he is entitled to an opportunity at an evidentiary hearing to prove the claim he has proffered—that his sentencing judge lacked impartiality and violated his

---

and also obliges a judge to require similar abstention on the part of court personnel.

[13]As discussed in the text above, Porter has proffered specific facts which are sufficient to warrant an evidentiary hearing on the impartiality issue. If Porter can prove that his sentencing judge lacked impartiality, we readily conclude Porter would also have satisfied the prejudice prong of *Sykes.*

constitutional right to a fair and impartial tribunal.[14]

In summary, we reject all of Porter's claims[15] except his new claim challenging the impartiality of his sentencing judge. With respect to that claim, the judgment of the district court is vacated, and the case is remanded for further proceedings consistent with this opinion.[16]

---

[14]The state argues that even assuming that Judge Stanley was biased at the time of the 1978 sentencing, that would not taint his resentencing in 1981. There is an implication to the same effect in the opinion of the Florida Supreme Court. *See Porter v. Singletary,* slip op. at 6, --- So.2d ----, ---- (Mar. 28, 1995). However, the record indicates that Judge Stanley, in the 1981 resentencing, placed substantial reliance on the 1978 proceedings. *See Porter v. State,* 429 So.2d 293, 295-96 (1983) (In affirming the 1981 sentence, the court stated; the "mandate of this Court required only that Porter be allowed to rebut, contradict or impeach Schapp's deposition testimony."); *Porter v. State,* 400 So.2d 5, 8 (1981) (Alderman, J., concurring) (In the original direct appeal, Alderman, J., stated: "The only reason for remanding this case for resentencing by the trial judge is to give the defendant an opportunity to rebut the deposition of Larry Schapp"); *see also Porter v. Wainwright,* 805 F.2d 930, 937 & n. 8 (11th Cir.1986) (casting doubt upon the argument that all constitutional deficiencies in the 1978 sentencing would be cured by the particular sentencing proceedings conducted in 1981). There is sufficient doubt about the scope of the 1981 sentencing proceedings to persuade us that Porter is entitled to an evidentiary hearing with respect to whether any proven bias on the part of Judge Stanley continued to taint the 1981 proceedings. Moreover, common sense and common experience do not provide strong support for the state's implication that a bias of this kind would dissipate in the period between November 1978 and the August, 1981 resentencing, especially in light of the statements Judge Stanley is alleged to have made recently.

[15]Any other claims not mentioned in this opinion are rejected as either barred or without merit or both.

[16]If the district court finds on remand that Porter has established cause, the district court must then conduct an evidentiary hearing on Porter's claim that his sentencing judge lacked impartiality. Because an inquiry involving the impartiality of a state judge would preferably be held in the state courts, either party might request the district court to exercise its discretion to stay its proceedings pending a motion to reopen the state proceedings.

Porter's application for a certificate or probable cause is GRANTED.  Porter's application for a STAY of his execution is GRANTED.  The judgment of the district court is

AFFIRMED in part, VACATED in part, and REMANDED.