723 So.2d 191 (1998)
Raleigh PORTER, Appellant,
v.
STATE of Florida, Appellee.
No. 90101.
Supreme Court of Florida.
October 15, 1998.
Rehearing Denied December 15, 1998.
*192 Martin J. McClain, Litigation Director CCRC, and Todd G. Scher, Chief Assistant CCRC, Office of the Capital Collateral Regional Counsel for the Southern Region, Miami, for Appellant.
Robert A. Butterworth, Attorney General, and Robert J. Landry, Assistant Attorney General, Tampa, for Appellee.
PER CURIAM.
Raleigh Porter appeals an order entered by the circuit court below pursuant to Florida Rule of Criminal Procedure 3.850 which found that Judge Richard M. Stanley Jr. was impartial at the time he sentenced appellant to death in 1978 and again in 1981. The circuit court's order stems from an evidentiary hearing required by a decision of the *193 Eleventh Circuit Court of Appeals in Porter v. Singletary, 49 F.3d 1483 (11th Cir.1995). We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. State v. Fourth District Court of Appeal, 697 So.2d 70, 71 (Fla.1997). We reverse the circuit court's order because we determine that the trial judge erred as a matter of law in finding that Judge Stanley was impartial when he sentenced appellant to death.
Appellant's case has a long judicial history, as detailed in Porter v. Singletary, 49 F.3d 1483 (11th Cir.1995) (affirming in part, vacating in part denial of habeas petition and holding appellant entitled to evidentiary hearing); Porter v. Singletary, No. 95-109-CIV-FTM-17D (M.D.Fla.1995) (denying successive petition for writ of habeas corpus); Porter v. Singletary, 14 F.3d 554 (11th Cir. 1994) (affirming judgment), cert. denied, 513 U.S. 1009, 115 S.Ct. 532, 130 L.Ed.2d 435 (1994); Porter v. Dugger, 805 F.Supp. 941 (M.D.Fla.1992) (vacating order); Porter v. Dugger, 777 F.Supp. 934 (M.D.Fla.1991) (denying habeas petition); Porter v. Wainwright, 805 F.2d 930 (11th Cir.1986), cert. denied, 482 U.S. 918, 107 S.Ct. 3195, 96 L.Ed.2d 682, and cert. denied, 482 U.S. 919, 107 S.Ct. 3196, 96 L.Ed.2d 683 (1987); Porter v. State, 700 So.2d 647 (Fla.1997) (holding Capital Collateral Representative responsible for court reporting costs); Porter v. State, 688 So.2d 318 (Fla.1997) (denying motion to disqualify Twentieth Judicial Circuit); Porter v. State, 653 So.2d 374 (Fla.) (affirming denial of 3.850 motion and holding that habeas corpus claim was barred), cert. denied, 514 U.S. 1092, 115 S.Ct. 1816, 131 L.Ed.2d 739 (1995); Porter v. Dugger, 559 So.2d 201 (Fla. 1990) (denying habeas corpus petition); Porter v. State, 478 So.2d 33 (Fla.1985) (affirming denial of rule 3.850 motion); Porter v. State, 429 So.2d 293 (Fla.) (affirming convictions and sentence), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983); and Porter v. State, 400 So.2d 5 (Fla.1981) (affirming convictions; vacating sentence). The facts of the case are set forth in detail in these various opinions.
The judicial proceedings began with a trial in November 1978 before a jury in Glades County with Judge Stanley presiding. The jury recommended sentences of life without the possibility of parole for twenty-five years for the two first-degree murders of which the jury had found appellant guilty. Judge Stanley overrode the recommendations of life sentences and entered sentences of death. In its first review in 1981, this Court reversed the death sentences because of a procedural error. Porter, 400 So.2d at 6. The resentencing was solely a reconsideration by Judge Stanley free from the procedural error that had required the reversal. On remand, Judge Stanley again overrode the jury's recommendation of life in prison and sentenced appellant to death. On appeal, the sentences of death were affirmed. Porter, 429 So.2d at 294.
Following the signing of a second death warrant for appellant's execution on March 1, 1995, we had before us appellant's appeal from the denial of his second motion for postconviction relief. Germane to the present appeal is the following from our opinion issued March 28, 1995, affirming the trial court's denial of the motion pursuant to Florida Rule of Criminal Procedure 3.850:
We begin by addressing an issue raised in this appeal which was not presented to the judge in this motion. Porter claims that the original trial judge's statement in a newspaper interview, the contents of which were published on March 23, 1995, indicating that the trial judge had already decided to sentence Porter to death before receiving the jury's advisory sentence, establishes that Porter's life recommendation was overruled by a judge who was biased in favor of the death penalty. However, even accepting the assertion about the judge's statement in the interview as true, any claim based upon that statement is procedurally barred. Information upon which Porter claims bias of the trial judge has long been available to Porter. In fact, Porter has raised the issue of judicial bias on several prior occasions. The record clearly demonstrates that on November 30, 1978, the trial judge entered a judgment and sentence stating that Porter was to be executed for both Count I and Count II although the jury did not recommend a sentence for each count until December 1, 1978. The newspaper article says nothing *194 more than what was already in the original 1978 sentencing order. The 1978 sentence has since been reversed. Porter's present attack is based upon the 1981 sentencing order, but we find nothing demonstrating that the newspaper article pertains to the 1981 sentencing.
Porter, 653 So.2d at 377-78 (footnote omitted).
Appellant thereafter filed a petition for writ of habeas corpus in the United States District Court, Middle District of Florida, which was denied. Porter v. Singletary, No. 95-109-CIV-FTM-17D (M.D.Fla. Mar.30, 1995). In its review of the denial of the writ, the Eleventh Circuit Court of Appeals stated in respect to appellant's claim concerning Judge Stanley's lack of impartiality:
Finally, Porter claims that he was denied his constitutional right to an impartial sentencing judge. Porter supports this claim with a proffer of crucial new evidence as follows: On Tuesday morning, March 28, 1995, counsel for Porter received a telephone call from Jerry Beck, the Clerk of the Glades County Circuit Court in which Porter was sentenced. The Clerk stated that he had some information regarding Porter's case, and that he was informing both the state attorney's office and Porter's counsel. The Clerk stated that either before or during Porter's trial, the judge presiding over the case, the Honorable Richard M. Stanley, stopped by the Clerk's Office early one morning, and the judge and the Clerk drank coffee together. The judge stated that he had changed the venue in the Porter trial from Charlotte County to Glades County because there had been a lot of publicity and Glades County "had good, fair minded people here who would listen and consider the evidence and then convict the son-of-a-bitch. Then, Judge Stanley said, he would send Porter to the chair." Affidavit of Beck. [Note 5]
[Note 5.] The March 28, 1995, opinion of the Florida Supreme Court merely acknowledges consideration of this proffer. The proffer to the Florida Supreme Court was in the form of an affidavit of counsel reporting on the telephone conversation of that morning. The proffer has now been supplemented with an affidavit of Clerk Beck himself.
This evidence of predisposition finds some corroboration in a proffered statement by Judge Stanley to news reporters. [Note 6]
[Note 6.] On Thursday, March 23, 1995, an article appeared in the Gainesville Sun newspaper reporting on a recent interview with Judge Stanley, who is now retired. The article quotes Judge Stanley as saying that when the judgment was brought out by the jury finding him guilty, "I knew in my own mind what the penalty should be, and I sentenced him to it." In addition to the foregoing, Porter has proffered the following evidence. A Miami Herald news reporter telephoned his attorney on Friday, March 24, 1995, and counsel returned the call and talked by telephone with the reporter that evening. The reporter stated that Judge Stanley submitted to another interview with reporters on Thursday evening, March 23, 1995, in which he allegedly again admitted his premature determination of Porter's sentence, and also stated that he had engaged in a debate with foes of the death penalty around the time of Porter's trial. In that debate, Judge Stanley stated that, in answer to the question whether he would be willing to pull the switch, he had answered that he would so long as he could at the sentencing reach down his leg, pull up his pistol, and shoot them between the eyes.
Porter argues that the proffered evidence, if proved, would establish that his sentencing judge had made up his mind to sentence Porter to death before the penalty proceedings began. Porter argues that such predisposition violated his constitutional right to a fair and impartial tribunal.
In the Florida sentencing scheme, the sentencing judge serves as the ultimate factfinder. If the judge was not impartial, there would be a violation of due process.

Porter, 49 F.3d at 1487 (citation omitted) (emphasis added).
The federal appeals court then remanded the case to the district court for an evidentiary *195 hearing to inquire into whether appellant had established cause in his successive federal petition to surmount the abuse of writ doctrine as well as the state procedural bar. Id. at 1489-90. The Eleventh Circuit held that if on remand appellant satisfied the cause standard, then he would be entitled to an opportunity to prove that his sentencing judge lacked impartiality and violated his constitutional right to a fair and impartial tribunal. Id. at 1490. The court included the following footnotes:
[Note 13.] As discussed in the text above, Porter has proffered specific facts which are sufficient to warrant an evidentiary hearing on the impartiality issue. If Porter can prove that his sentencing judge lacked impartiality, we readily conclude Porter would also have satisfied the prejudice prong of [Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)].
[Note 16.] If the district court finds on remand that Porter has established cause, the district court must then conduct an evidentiary hearing on Porter's claim that his sentencing judge lacked impartiality. Because an inquiry involving the impartiality of a state judge would preferably be held in the state courts, either party might request the district court to exercise its discretion to stay its proceedings pending a motion to reopen the state proceedings.
Porter, 49 F.3d at 1490.
After considering the evidence presented at an evidentiary hearing, a federal magistrate entered a report and recommendation which stated:
The evidence presented at the hearing and the record in the case shows that neither Porter nor his counsel had knowledge that Judge Stanley made the alleged comment to Clerk Beck and that neither Porter nor his counsel had other similar knowledge to put them on notice of bias on the part of Judge Stanley. Therefore, Petitioner has established cause to surmount the abuse of the writ doctrine and the state procedural bar.
Porter v. Singletary, No. 95-109-CIV-FTM-17D (M.D. Fla. Report and Recommendation filed May 24, 1996).
The State made no objection to the magistrate's findings, and the federal district court adopted those findings. Porter v. Singletary, No. 95-109-CIV-FTM-17D (M.D. Fla. order filed June 14, 1996).
On October 14, 1996, appellant and the State jointly sought to reopen appellant's case in this Court. On November 5, 1996, this Court granted the joint motion to reopen the case and directed the trial court to hold an evidentiary hearing to "determine the impartiality of Judge Richard M. Stanley, Jr. as a basis for a new sentencing hearing pursuant to Florida Rule of Criminal Procedure 3.850." Porter v. State, No. 85,410 (Fla. order filed Nov. 5, 1996).
Appellant then sought an order from this court disqualifying the Circuit Court of the Twentieth Judicial Circuit from conducting the evidentiary hearing. Appellant also requested that the scope of the hearing be expanded to include the issue of Judge Stanley's lack of impartiality not only as a basis for a new sentencing hearing but also as a basis for a new trial. We denied both the disqualification and the request to expand the issue. Porter v. State, 688 So.2d 318 (Fla.1997).
The circuit court held the evidentiary hearing on January 17, 1997. In its decision ordering the evidentiary hearing, the Eleventh Circuit succinctly stated the crucial necessity for the impartiality of a trial judge as to sentencing in capital cases in Florida by stating:
In the Florida sentencing scheme, the sentencing judge serves as the ultimate factfinder. If the judge was not impartial, there would be a violation of due process. The law is well-established that a fundamental tenet of due process is a fair and impartial tribunal. Marshall v. Jerrico, Inc., 446 U.S. 238, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980). There the Supreme Court said:
The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases. This requirement of neutrality in adjudicative proceedings safeguards the two central concerns of procedural due process, *196 the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decisionmaking process.... The neutrality requirement helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law.... At the same time, it preserves both the appearance and reality of fairness, "generating the feeling, so important to a popular government, that justice has been done,"... by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him.
446 U.S. at 242, 100 S.Ct. at 1613 (citations omitted).
Porter, 49 F.3d at 1487-88.
Our precedent is clearly consistent with this statement:
Florida's death penalty statute, section 921.141, Florida Statutes (1983), provides that the jury shall hear the evidence on aggravation and mitigation and render an advisory sentence based on whether there are sufficient aggravating circumstances to warrant a death sentence, and, if so, whether there are sufficient mitigating circumstances to outweigh the aggravating circumstances. The statute goes on to provide that, notwithstanding the recommendation of the jury, the judge shall weigh the aggravating and mitigating circumstances and enter a sentence of life imprisonment or death based on the judge's weighing process. In the event the death sentence is imposed, the judge is required to set forth in writing the findings on which the death sentence is based. It is these written findings of fact and the trial record which furnish the basis for this Court's review of the death sentences. It is clear then, that the prosecutor correctly stated the law in Florida: the judge is the sentencing authority and the jury's role is merely advisory.
Grossman v. State, 525 So.2d 833, 839 (Fla. 1988). In Zeigler v. State, 452 So.2d 537 (Fla.1984), we recognized that a trial judge's lack of impartiality would require a resentencing if it were proven that the trial judge had told the prosecutor, "[y]ou get me one first-degree murder conviction and I'll fry the son of a bitch." Id. at 539.
In sum, due process under Florida's capital sentencing procedure requires a trial judge who is not precommitted to a life sentence or a death sentence but rather is committed to impartially weighing aggravating and mitigating circumstances. As we have repeatedly stressed, a trial judge's weighing of statutory aggravating factors and statutory and nonstatutory mitigating circumstances is the essential ingredient in the constitutionality of our death penalty statute. Grossman, 525 So.2d at 839. It is for this very reason that we have found it essential for trial judges to adequately set forth their weighing analyses in detailed written orders. Walker v. State, 707 So.2d 300, 318-19 (Fla. 1997); Campbell v. State, 571 So.2d 415, 419 (Fla.1990).
We therefore review the record of the evidentiary hearing and the trial judge's determination that Judge Stanley was an impartial sentencer for the purpose of analyzing whether the evidence supports the legal conclusion that Judge Stanley was impartial, as constitutionally required. In this review, we defer to the present trial judge's resolution of issues of fact. However, the issue as to whether, based upon the facts presented at the evidentiary hearing, Judge Stanley met the required standard of impartiality is an issue of law subject to our review as a matter of law. We conclude that the legal effect of this evidence is that Judge Stanley's impartiality did not satisfy the constitutional requirement that the sentencer of appellant for the first-degree murder convictions be impartial and not predisposed to a sentence of either life or death.[1]
*197 Based on our legal conclusion, appellant is entitled to a complete new sentencing before an impartial trial judge. In view of the circumstances of the resentencing, we believe that it is appropriate that the Chief Justice of this Court appoint the trial judge to preside over the resentencing. This trial judge will be appointed by separate order.
Since we conclude that appellant is entitled to a resentencing proceeding before a new sentencing judge, the next question concerns how our conclusion is to affect the new judge's decision as to whether to accept the jury's recommendation of a life sentence. This Court has previously reviewed whether Judge Stanley's decision to override the jury's recommendation was sustainable on the basis of our legal standard for overriding a jury's recommendation set forth in Tedder v. State, 322 So.2d 908, 910 (Fla.1975). In our first review in this case, we said:
This Court is not saying that there is an insufficient basis in the record to sustain the judge's imposition of the death penalty. There may very well be, notwithstanding the jury's recommendation of a life sentence. We are not making a substantive determination of what the proper sentence should be.
Porter, 400 So.2d at 8.
In our second review, we stated:
On this appeal Porter again contends that the jury override does not meet the standard set out in Tedder v. State, 322 So.2d 908 (Fla.1975), where this Court held: "In order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ." Id. at 910. The record in this case supports the court's findings regarding the aggravating and mitigating circumstances. As noted by the trial court, the jury might well have been swayed by defense counsel's reading of an "extremely vivid and lurid" description of an electrocution to the jury. Additionally, the trial court had access to Schapp's deposition, which the jury did not see. This case, therefore, is similar to White v. State, 403 So.2d 331 (Fla.1981), where we affirmed a jury override. Defense counsel's description of an electrocution might well have been calculated to influence the recommendation of a life sentence through emotional appeal. On the facts of this case, we find, even according the jury recommendation its due deference, that these sentences meet the Tedder standard.
Porter, 429 So.2d at 296.
In our third review, we stated: "We also point out that we considered the sufficiency of the evidence and the application of Tedder v. State, 322 So.2d 908 (Fla.1975), on Porter's direct appeals." Porter, 478 So.2d at 36.
In our fourth review, appellant challenged successively the trial judge's jury override. We held that "`even though the jury override might not have been sustained today, it is the law of the case.' Johnson v. Dugger, 523 So.2d 161, 162 (Fla.1988)." Porter, 559 So.2d at 203. We then quoted Kennedy v. Wainwright, 483 So.2d 424, 426 (Fla.), cert. denied, 479 U.S. 890, 107 S.Ct. 291, 93 L.Ed.2d 265 (1986), in which we held that "[i]t is only in the case of error that prejudicially denies fundamental constitutional rights that this Court will revisit a matter previously settled by the affirmance of a conviction or sentence." Porter, 559 So.2d at 203. We concluded that "Porter has shown no such constitutional infirmity, and, therefore, this issue is procedurally barred." Id.
The issue next becomes whether the constitutional infirmity concerning due process which we find based upon the determination that the trial judge lacked impartiality overcomes the procedural bar we *198 found to exist in our 1990 review. We find that the infirmity does overcome the procedural bar because it is the trial judge who must make the determination as to whether there is a reasonable basis in the record for the jury's recommendation. The trial judge makes this decision not only on the basis of the record before the jury but also upon the record as developed at the part of sentencing proceeding that is solely before the trial judge. Heiney v. State, 620 So.2d 171, 174 (Fla.1993); Stevens v. State, 552 So.2d 1082, 1087-88 (Fla.1989).
The present procedural status of this case is similar to those cases in which we have reversed a trial judge's decision to override a jury when we have determined that a defendant's counsel was ineffective in a penalty phase even though the jury had recommended a life sentence. In Torres-Arboleda v. Dugger, 636 So.2d 1321 (Fla.1994), we dealt with such a circumstance:
Based upon the testimony and documentary evidence presented during the postconviction proceeding, Torres-Arboleda has shown "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." This mitigating evidence, which existed at time of trial, "might have provided the trial judge with a reasonable basis to uphold the jury's life recommendation." Had these factors been discovered and presented to the court at Torres-Arboleda's original sentencing, there would have been a reasonable basis in the record to support the jury's recommendation and the jury override would have been improper....
... Thus, we vacate Torres-Arboleda's sentence of death and remand for a resentencing hearing before the judge. It is unnecessary to conduct the hearing before a jury as Torres-Arboleda is entitled to the benefit of the previous jury's life recommendation.
Torres-Arboleda, 636 So.2d at 1326 (citations omitted).
Similarly, in the resentencing before the new trial judge, appellant is entitled to the jury's recommendation of a life sentence. In this resentencing, there shall be a consideration of the entire evidence presented by the State and by appellant. This shall include the evidence presented to the jury in the guilt and penalty phases in 1978, which will require the court to review the transcript of the testimony and exhibits admitted into evidence in the trial before the jury.[2] The State and appellant shall be provided an opportunity to present any additional admissible evidence that each chooses to present at an evidentiary hearing. The State and appellant shall be permitted to submit to the trial judge written memoranda in support of their respective arguments as to the jury override and to have an oral hearing before the judge.
Following the presentation of evidence and argument, the trial judge shall initially determine whether, based upon the entire record, an override of the jury's life recommendation is appropriate pursuant to the standard for a jury override we established in Tedder and as we applied that standard in Torres-Arboleda. If the trial judge decides that the jury's life recommendations are not to be overridden, the trial judge shall enter a written sentencing order setting forth the reasons for the trial judge's decision and sentencing appellant to life sentences without the possibility of parole for twenty-five years with credit for time served. The trial judge is to decide whether the life sentences are to be served concurrently or consecutively. See § 921.16, Fla. Stat. (1977). If the trial judge decides that the jury's recommendation of a life sentence is to be overridden, the trial judge shall set forth in the sentencing order the reasons for this decision and shall enter a sentencing order conforming to our direction in Campbell.
Appellant also has renewed his claim that, upon a finding that the trial court was not impartial, we should grant a new trial of the guilt phase of his case. We do not agree. The issue upon which we have determined *199 Judge Stanley to lack the necessary impartiality involves only the sentencing phase of appellant's trial. This is similar our holding in Zeigler: "In the instant case, however, we have a statement which, if true, would possibly support resentencing, not reversal, of conviction. The statement reflects only on the sentencing attitude of the judge." Zeigler, 452 So.2d at 540.
Accordingly, we reverse the order of the trial judge and order a new sentencing phase to be held in accord with this decision before a trial judge to be appointed by the Chief Justice of this Court.
It is so ordered.
HARDING, C.J., and OVERTON, SHAW, KOGAN and WELLS, JJ., concur.
ANSTEAD, J., concurs in part and dissents in part with an opinion.
PARIENTE, J., recused.
ANSTEAD, J., concurring in part and dissenting in part.
I concur in the majority's conclusion that "the trial judge erred as a matter of law in finding that Judge Stanley was impartial." Majority op. at 1. I dissent, however, from the majority's conclusion that its finding of bias and lack of impartiality does not mandate that a new trial be granted on both the guilt and penalty phases of the defendant's case. Unless I am mistaken, I believe it is a fundamental principle of our justice system that a defendant is entitled to an impartial judge in all phases of the judicial proceedings.
NOTES
[1] The following statement from this evidence, which is part of a colloquy during the evidentiary hearing, demonstrates why we reach this legal conclusion:

Q: Did you indicate in the deposition that two days ago, in reference to your disagreement with the jury's recommendation, that it was because of your inner nature that you disagreed with it?
A [by Judge Stanley]: Because I felt that it should have been something else, yes, if that's what you want.
Q: Well, no. I mean the question is, do you recall using the words, the basismy inner nature was your answer?
A: What you're trying to get me to say is I'll just lay this out for you. I believe that if the same thing had happened, that I would have killed Mr. Porter. Mr. Porter wouldn't have had to be put to death. But if he had done that to my family, I'd a killed him.
[2] Within thirty days of the appointment of the new trial judge, the trial judge shall hold a status conference at which issues, if any, as to what constitutes the record will be heard. Appellant himself may attend this hearing by telephone conferencing.